*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0274p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DIANA RENKEL,

    *Plaintiff-Appellant,*

  *v.*

          No. 05-3420

UNITED STATES OF AMERICA,

    *Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 04-00053—Walter H. Rice, District Judge.

Submitted: June 7, 2006

Decided and Filed: August 3, 2006

Before: SILER, CLAY, and McKEAGUE, Circuit Judges.

_____

**COUNSEL**

_____

**ON BRIEF:** Bruce T. Wick, Wastlake, Ohio, for Appellant. Gregory P. Dunsky, UNITED STATES ATTORNEY, Dayton, Ohio, for Appellee.

_____

**OPINION**

_____

  McKEAGUE, Circuit Judge. Diana Renkel purportedly received sub-standard medical care while incarcerated in the United States Disciplinary Barracks in Ft. Leavenworth, Kansas. She sued the Government, asserting claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-2680, and the Eighth Amendment to the United States Constitution. The Government moved to dismiss the lawsuit for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). In response, Renkel argued for the first time that the Government's actions violated her rights under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, 1465 U.N.T.S. 85, 23 I.L.M. 1027 (the "Convention" or "Convention Against Torture"). The district court granted the Government's motion. The court explained that although Renkel had not raised a torture-related claim in her complaint, doing so "would have been fruitless" because there is no private right of action under the Convention. We agree, and affirm judgment in favor of the Government.

1

## I.

Renkel squarely presents us with one issue on appeal: whether she has an actionable claim for relief under the Convention Against Torture.[1]  This is a purely legal question, which we review *de novo. Singleton v. United States*, 277 F.3d 864, 870 (6th Cir. 2002).[2]

Under the federal Constitution, all international treaties in which the United States enters become part of the "supreme Law of the Land." U.S. Const. art. VI, cl. 2.  "[T]reaties have the same legal effect as statutes." *United States v. Emuegbunam*, 268 F.3d 377, 389 (6th Cir. 2001) (citing *Whitney v. Robertson*, 124 U.S. 190, 194 (1888); *United States v. Page*, 232 F.3d 536, 540 (6th Cir. 2000)).  Yet, treaties, like some statutes, do not always directly create rights that a private citizen can enforce in court. *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 808 (D.C. Cir. 1984) (Bork, J., concurring).  As we explained in *Emuegbunam*,

> A treaty is primarily a compact between independent nations.  It depends for the enforcement of its provisions on the interest and honor of the governments which are parties to it.  If these fail, its infraction becomes the subject of international negotiations and reclamation, so far as the injured parties choose to seek redress, which may in the end be enforced by actual war.  It is obvious that with all this the judicial courts have nothing to do and can give no redress.

*Emuegbunam*, 268 F.3d at 389 (quoting *Head Money Cases*, 112 U.S. 580, 598 (1884)); *see also Foster v. Neilson*, 27 U.S. (2 Pet.) 253, 307 (1829) ("The judiciary is not that department of the government, to which the assertion of its interests against foreign powers is confided; and its duty commonly is to decide upon individual rights, according to those principles which the political departments of the nation have established."), *overruled in part on other grounds*, *United States v. Percheman*, 32 U.S. (7 Pet.) 51 (1833).  "In fact, courts *presume* that the rights created by an international treaty belong to a state and that a private individual cannot enforce them." *Emuegbunam*, 268 F.3d at 389 (emphasis added, citations omitted).

Some treaties may, however, directly provide for private rights of action.  "Self-executing treaties" are those treaties which do not require domestic legislation to give them the full force of law. *See TWA v. Franklin Mint Corp.*, 466 U.S. 243, 252 (1984); *Goldstar (Panama) S.A. v. United States*, 967 F.2d 965, 968 (4th Cir. 1992).  Such treaties can create private rights enforceable in

---

[1] In her opening brief, Renkel does not directly attack the district court's determination that it lacked subject-matter jurisdiction over her Eighth Amendment and FTCA claims.  "Issues which were raised in the district court, yet not raised on appeal, are considered abandoned and not reviewable on appeal." *Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998) (citation omitted).  While she argues in her reply brief that the district court did have jurisdiction over her claims, she failed to raise the asserted grounds before the district court.  Accordingly, we will not address the merits of whether the lower court had jurisdiction over her Eighth Amendment and FTCA claims. *Am. Trim, LLC v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004).  Similarly, we will not address the merits of her Administrative Procedure Act argument, which she raised for the first time in her reply brief.

[2] The Government argues that because Renkel did not seek leave below to plead a claim under the Convention, she has waived any such claim.  Renkel did, however, raise the issue in her brief in opposition to the Government's motion to dismiss. *See Vencor, Inc. v. Standard Life & Acc. Ins. Co.*, 317 F.3d 629, 642 n.11 (6th Cir. 2003) (explaining that raising an issue in an opposition brief can be sufficient to preserve it for appeal).  Moreover, the issue is purely one of law.  Accordingly, we will reach the merits of the issue, despite any inadequacies in Renkel's presentation of it before the district court. *See McFarland v. Henderson*, 307 F.3d 402, 407 (6th Cir. 2002) (noting an exception to the general rule against resolving new claims on appeal when they are "presented with sufficient clarity and completeness").

court.[3]  On the other hand, "non-self-executing" treaties do require domestic legislation to have the force of law. *Auguste v. Ridge*, 395 F.3d 123, 133 n.7 (3d Cir. 2005).  For a non-self-executing treaty, any private claim must be based on a violation of the domestic law implementing the provisions of that treaty. *Raffington v. Cangemi*, 399 F.3d 900, 903 (8th Cir. 2005).  In other words, federal courts "are bound to give effect to international law and to international agreements, except that a 'non-self-executing' agreement will not be given effect as law in the absence of necessary authority." *Buell v. Mitchell*, 274 F.3d 337, 372 (6th Cir. 2001) (quoting Restatement (Third) of Foreign Relations Law § 111 (1987)).

"Whether a treaty is self-executing is an issue for judicial interpretation . . . ." *Frolova v. U.S.S.R.*, 761 F.2d 370, 373 (7th Cir. 1985) (citation omitted).  In general, we first look to the express terms of the treaty, and then to "the treaty as a whole" to determine whether it evidences an intent to be self-executing and to create a private right of action. *See Tel-Oren*, 726 F.2d at 808 (Bork, J., concurring) (citation omitted).

## II.

Renkel argues that the Government violated her rights under the Convention, and cites several Articles in support, including Articles 1-2 and 13-16.  Those Articles are not, however, expressly self-executing. *See* Convention, 23 I.L.M. 1027, 1027-28, 1030-31.  Moreover, in consenting to the treaty's ratification, the United States Senate declared, as recommended by President Reagan, that Articles 1-16 are not self-executing. *Castellano-Chacon v. I.N.S.*, 341 F.3d 533, 551 (6th Cir. 2003) (citing 136 Cong. Rec. S17486-01, S17492 (1990)); *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (citing the letter of transmittal from President Reagan recommending that the Senate adopt the Convention along with "a declaration that the Convention is not self-executing").  Thus, it is clear that it was the intent of both the Senate and the President that Articles 1-16 are not to be self-executing.  We, along with several of our sister courts, have given judicial effect to the Senate's declaration. *See Castellano-Chacon*, 341 F.3d at 551; s*ee also Raffington*, 399 F.3d at 903; *Auguste*, 395 F.3d at 133 n.7; *Reyes-Sanchez v. United States Attorney Gen.*, 369 F.3d 1239, 1240 n.1 (11th Cir. 2004); *Saint Fort v. Ashcroft*, 329 F.3d 191, 202 (1st Cir. 2003); *Wang*, 320 F.3d at 140.  As the Articles are not self-executing, they do not create private rights of action; therefore, any private lawsuit seeking to enforce the United States' obligations under the Convention must be based on domestic law.

The domestic law implementing the Convention, however, lends no aid to Renkel.  The Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, § 2242, 112 Stat. 2681, 2681-822 ("FARRA") and the regulations promulgated thereunder, fulfill the United States' obligations under Article 3 to prohibit the transfer of aliens to countries where they would be tortured.[4]  Renkel has no claim related to Article 3.  The United States also enacted 18 U.S.C.

---

[3]Although related, "the questions of whether a treaty is self-executing and whether it creates private rights and remedies are analytically distinct." *Medellin v. Dretke*, 125 S. Ct. 2088, 2103 (2005) (O'Connor, J., dissenting).  While a treaty must be self-executing for it to create a private right of action enforceable in court without implementing domestic legislation, all self-executing treaties do not necessarily provide for the availability of such private actions.

[4]Article 3 states:

1. No State Party shall expel, return ("refouler") or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture.

2. For the purpose of determining whether there are such grounds, the competent authorities shall take into account all relevant considerations including, where applicable, the existence in the State concerned of a consistent pattern of gross, flagrant or mass violations of human rights.

§§ 2340 and 2340A to fulfill its obligations under Articles 4 and 5.[5]  Yet, those sections criminalize torture outside the United States; they do not provide civil redress for torture within the United States.  For the latter, a plaintiff must pursue her claim under the appropriate domestic law, which might include the FTCA or the Eighth Amendment, and meet the jurisdictional and substantive requirements for civil relief.

Finally, Renkel argues that the Convention Against Torture embodies a customary norm of international law against torture.  Under certain circumstances, a federal court can imply a private right of action for violations of higher, peremptory norms of international law.  *Buell*, 274 F.3d at 373-74.  Renkel has not shown that the appropriate circumstances exist here.

## III.

Renkel has no cause of action under the Convention Against Torture because it is not self-executing.  Nor does Renkel have a cause of action under any domestic law implementing the United States' obligations under the Convention.  Accordingly, we AFFIRM judgment in favor of the Government.

---

[5]Article 4 states:

1. Each State Party shall ensure that all acts of torture are offences under its criminal law.  The same shall apply to an attempt to commit torture and to an act by any person which constitutes complicity or participation in torture.

2. Each State Party shall make these offences punishable by appropriate penalties which take into account their grave nature.

Article 5 states:

1. Each State Party shall take such measures as may be necessary to establish its jurisdiction over the offences referred to in article 4 in the following cases:

> 1. When the offences are committed in any territory under its jurisdiction or on board a ship or aircraft registered in that State;
>
> 2. When the alleged offender is a national of that State;
>
> 3. When the victim was a national of that State if that State considers it appropriate.

2. Each State Party shall likewise take such measures as may be necessary to establish its jurisdiction over such offences in cases where the alleged offender is present in any territory under its jurisdiction and it does not extradite him pursuant to article 8 to any of the States mentioned in Paragraph 1 of this article.

3. This Convention does not exclude any criminal jurisdiction exercised in accordance with internal law.