RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0427p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ALGIS J. GALE,

*Defendant-Appellant.*

No. 05-4204

>

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 01-00048—John D. Holschuh, Sr. District Judge.

Argued: September 14, 2006

Decided and Filed: November 20, 2006

Before: GIBBONS and McKEAGUE, Circuit Judges; FORESTER, Senior District Judge.[*]

_____

## COUNSEL

**ARGUED:** Kort W. Gatterdam, CARPENTER & LIPPS, Columbus, Ohio, for Appellant. Daniel Allen Brown, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee. **ON BRIEF:** Kort W. Gatterdam, CARPENTER & LIPPS, Columbus, Ohio, for Appellant. Daniel Allen Brown, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

_____

## OPINION

_____

McKEAGUE, Circuit Judge. Defendant-Appellant Algis J. Gale appeals his sentence for wire fraud involving car loans. He takes aim at the district court's sentencing-range calculation under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines")[1] as well as its consideration of the remaining sentencing factors under 18 U.S.C. § 3553(a). He also argues that he should not have to pay restitution, or, alternatively, that the amount ordered was too high.

For the reasons stated below, we affirm Gale's sentence.

_____

[*]The Honorable Karl S. Forester, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

[1]The district court used the 1995 version of the Guidelines manual.

## I.

Midbanc Lease, Inc. ("Midbanc") locates financing for individuals purchasing collector automobiles. In March 1996, Gale contacted and represented to Midbanc president and owner Patricia McClintick that he and his associate, Airinhos Serradas, were interested in obtaining financing for vintage Cadillacs they wanted to purchase. Gale provided Midbanc with a completed credit application and various tax records. Gary DeTrano, among others, was listed as a personal reference. All of Midbanc's contacts with Gale were by telephone, facsimile, and Federal Express.

With Midbanc's assistance, Gale obtained two loans from Key Bank of Ohio for the purchase of a 1946 Cadillac and 1947 Cadillac. Gale indicated that the purchase price for each vehicle was $35,000 and he would be placing a total down payment of $10,000, leaving a loan amount for each vehicle of $30,000.

After the loans were approved, Gale provided Midbanc with consumer notes signed by himself and (purportedly) Serradas. Midbanc received the funds from Key Bank and forwarded them to Gale.

Serradas eventually learned that Gale had used his name to obtain the loans. He denied any knowledge of purchasing and obtaining financing for the two Cadillacs. Serradas also denied signing any documents regarding the financing obtained for the classic cars. Under the terms of Midbanc's agreement with Key Bank, Midbanc had to pay Key Bank the $60,000 for the amount of money loaned to Gale.

Subsequent investigation revealed the bills of sale submitted to Midbanc by Gale were fraudulent. The bill of sale for the 1946 Cadillac listed the purchase price as $35,000 when the actual purchase price was $15,000. Additionally, with respect to the 1947 Cadillac, the purchase price was $17,000, not $35,000 as listed. Midbanc stopped the shipment of the two Cadillacs from California to New York, took possession of the vehicles, and subsequently sold them together for $20,000 to a third party.

In 2001, the Government indicted Gale on two counts of wire fraud and one count of mail fraud in connection with the failed loan transaction. He pleaded guilty to one count of wire fraud; the other two counts were subsequently dismissed. The district court held a sentencing hearing in June 2005. It adjourned the hearing to give the parties time to gather additional evidence of any repayments Gale might have made to Midbanc.

The hearing resumed in August. After reviewing the various memoranda and reports filed by the parties and hearing testimony and counsels' arguments, the district court issued its ruling:

> In this case I have weighed all of those factors under [18 U.S.C. §] 3553(a) and have carefully reviewed the memoranda that have been filed . . . . [A]s I said earlier, one of the factors that I am required to consider and give weight to, along with the other factors, is the history and characteristics of the defendant. And I have already described that history and characteristics, and I have also described that this actually is virtually a copy of the previous offense, doing the same thing, making a fraudulent application for a loan in order to acquire vintage Cadillac automobiles. In other words, it's not the first time Mr. Gale has done that kind of fraud. He's committed a number of frauds based on his criminal history. It's not the first time he has committed fraud in obtaining a loan to purchase or acquire vintage automobiles.
>
> For the previous offense he received, as I recall, a minimum of 18 months. I think I would be perfectly justified under all of the circumstances in this case to impose a sentence of far more than 18 months. But I have considered all of these

factors, including Mr. Gale's age, and I don't intend to impose a sentence greater than 18 months.**2**

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Algis Julius Gale, is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 18 months.

\* \* \*

After considering the factors to be considered in proposing a sentence as set forth in 18 U.S.C. 3553(a), including an application of the advisory sentencing guidelines, and considering the facts of this particular case and after a careful review of the presentence investigation report, I have concluded that a reasonable sentence is the one that I have imposed. It happens to be a sentence within the imprisonment range of the sentencing guidelines after considering any basis for a departure upward or downward from that guideline range.

It is not, however, based solely on the sentencing guidelines. I have considered those to be simply one of seven factors that I must consider.

I also believe that the sentence is sufficient, but not greater than necessary, to:

Reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

To afford adequate deterrents to criminal conduct;

To protect the public from further crimes of the defendant; and

To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In addition to imprisonment, the district court sentenced Gale to three years of supervised release and restitution of $28,982.06.

Gale timely appealed his sentence.

## II.

### A.     *Post-**Booker** Sentencing in General*

Title 18 U.S.C. § 3553(a) requires the district court to consider the following factors in fashioning a defendant's sentence:

1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

---

**2**The district court had earlier calculated the advisory Guidelines range as eighteen to twenty-four months of imprisonment.

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5) any pertinent policy statement . . .;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Under the post-*Booker*[3] sentencing regime, a district court must impose "'a sentence sufficient, but not greater than necessary to comply with the purposes' of § 3553(a)(2)." *United States v. Cage*, 458 F.3d 537, 540 (6th Cir. 2006) (quoting *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006)).

On appellate review, we review a sentence for "reasonableness."[4] As explained in *United States v. Jones*,

The district court must articulate the reasons for the particular sentence imposed in order to enable this Court to engage in a meaningful reasonableness review of the sentence. *United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005) (finding reasonableness review impossible where the district court provided a list of characteristics of the defendant that it considered at sentencing, without any accompanying analysis, and did not reference the applicable Guidelines provisions); *see also United States v. James Williams*, 432 F.3d 621, 623-24 (6th Cir. 2005) (affirming the district court's decision to depart downward where the district court, in following the framework established in *Jackson*, considered the applicable Guidelines range and provided a detailed analysis in support of its decision to depart). This Court has determined that a reasonableness review contains both substantive and procedural components. [*United States v.*] *McBride*, 434 F.3d [470,] 475 n. 3 [(6th Cir. 2006)] (citing *United States v. Webb*, 403 F.3d 373, 383-85 (6th

---

[3] *United States v. Booker*, 543 U.S. 220 (2005).

[4] In its ruling, the district court concluded that a "reasonable" sentence was the one it imposed. The overall reasonableness of the sentence is an appellate standard, not one for the sentencing court to employ. *See, e.g.*, *Cage*, 458 F.3d at 541. As explained *infra*, however, the district court considered the relevant sentencing factors in applying its "independent judgment" to fashion a sentence for Gale. Thus, the district court's reference to the reasonableness of the sentence does not impair its validity. *United States v. Cruz*, 461 F.3d 752, 754-55 (6th Cir. 2006).

Cir. 2005)). We must consider, therefore, the length of the sentence as well as "the factors evaluated and the procedures employed by the district court in reaching its sentencing determination." *Webb*, 403 F.3d at 383.

445 F.3d 865, 869 (6th Cir.), *cert. denied*, 2006 WL 2049837 (U.S. Oct. 2, 2006) (No. 06-5395). While "[t]he district court need not explicitly reference each of the § 3553(a) factors in its sentencing determination," "there must be sufficient evidence in the record to affirmatively demonstrate the court's consideration of [these factors]." *Id.* (internal quotations omitted).

If this court concludes that the sentence is reasonable, it must affirm. *Cage*, 458 F.3d at 540. If, on the contrary, it finds the sentence either procedurally or substantively unreasonable, it must reverse and remand for resentencing. *United States v. William Davis*, 458 F.3d 491, 495 (6th Cir. 2006).

**B.      *Section 3553(a)(4) – The Guidelines***

Although the Guidelines are now advisory, rather than mandatory, the district court must still consider the Guidelines in fashioning a defendant's sentence, and must construe them correctly in doing so. 18 U.S.C. § 3553(a)(4)(A); *Jones*, 445 F.3d at 869. "Legal conclusions regarding the application of the Guidelines are reviewed *de novo.*" *Foreman*, 436 F.3d at 640 (citing *United States v. Gregory*, 315 F.3d 637, 642 (6th Cir. 2003)). The district court's findings of fact on sentencing, however, "will not be set aside unless clearly erroneous." *United States v. Gardner*, 417 F.3d 541, 543 (6th Cir. 2005) (citing *United States v. Walton*, 908 F.2d 1289, 1300-01 (6th Cir. 1990)).

**1.      *Base Offense Level and Loss Incurred***

Gale argues that the district court incorrectly calculated the amount of loss attributable to the criminal fraud. He agrees that the proper base level for his offense is six, and he also agrees that the district court started with the correct amount – $60,000. He maintains, however, that the court failed to consider the amounts he paid for the cars – $17,500 and $15,000.[5] Instead, the district court offset the $60,000 loan with the amount for which Midbanc actually sold the cars – $20,000 total. Thus, Gale argues that the intended loss was $27,500 ($60,000 minus $32,500), not $40,000, and his offense level should have only been increased four, rather than six, points.

This argument suffers from at least one fundamental defect – the district court actually applied only a four-point increase, not six. Under U.S.S.G. § 2F1.1(b)(1), a defendant's base offense level is increased by four points if the loss is more than $20,000, but not more than $40,000; five points if the loss is more than $40,000, but not more than $70,000; and six points if the loss is more than $70,000, but not more than $120,000. Applying this section, the district court increased Gale's offense level by four points, based on the actual loss of $40,000. Even if Gale is correct that $27,500 is the proper loss figure, he would still remain in the "$20,000 to not more than $40,000" loss range, which requires a four-point increase.

Gale also takes issue with the commercial reasonableness of Midbanc's mitigation efforts. He points to a potential buyer who purportedly made several offers to purchase the cars, the largest one being $50,000 for both Cadillacs. Gale maintains that Midbanc should have contacted him to determine whether he could rectify the problem before it sold the cars.

---

[5]Gale also identifies approximately $10,500 in various fees and expenses he allegedly incurred in anticipation of getting the cars. He does not suggest, however, that Midbank could have somehow recouped this amount when it sold the cars.

The district court correctly rejected this argument.  Under note 7(b) of the commentary to U.S.S.G. § 2F1.1, "if a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan."  There is no mention of the "commercial reasonableness" of the institution's recovery efforts.  Gale's citation to U.S.S.G. § 5K2.10(e) is inapposite, as that provision deals with victims who provoke the offense against them, which, as the Government points out and Gale does not dispute, is plainly not the case here.  Assuming *arguendo* that Midbanc could have sold the cars for $50,000, this would not alter the offense-level calculation.  If the intended loss exceeds the actual loss, the intended loss should be used in the offense-level calculation.  U.S.S.G. § 2F1.1 cmt. n.7.  Since Gale's admitted intended loss – $27,5000 – exceeds his suggested actual loss – $60,000 less $50,000 – the former figure would be used; as this figure falls within the "$20,000 to not more than $40,000" loss range, his base offense level would again be subject to a four-point increase.

## 2.    *Criminal History*

The district court determined that Gale's criminal history placed him in Category VI.  Gale maintains that the district court erroneously treated four of his past state criminal offenses as separate, rather than related, offenses.  Specifically, he argues that the four offenses were: (a) part of the same course of conduct, constituting a single common scheme or plan; and (b) consolidated for purposes of sentencing.  Had the district court treated the four offenses as related, Gale's criminal history would have placed him in Category V.

Under U.S.S.G. § 4A1.1(a), a defendant receives three criminal history points "for each prior sentence of imprisonment exceeding one year and one month."  Under U.S.S.G. § 4A1.2(a)(2), "[p]rior sentences imposed in unrelated cases are to be counted separately," while such sentences "imposed in related cases are to be treated as one sentence."  On the question of whether cases are "related," application note 3 provides:

> Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense).  Otherwise, prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.

Gale admitted before the district court that the four offenses were separated by intervening arrests.  Under the first portion of note 3, that is the end of the inquiry.  "Only if there was no intervening arrest may the court consider the factors that may 'otherwise' render prior sentences 'related.'" *United States v. Gorostieta*, 134 F. App'x 802, 804 (6th Cir. 2005) (unpublished) (citing *United States v. Bradley*, 218 F.3d 670, 673 (7th Cir. 2000)).  Because he was arrested for one offense prior to committing another one, he cannot argue that the offenses were "otherwise" related.[6]

---

[6]Even if he could get past the intervening arrests, Gale has failed to present sufficient evidence of a common scheme or plan or consolidated sentences.  Other than his attorney's assertion that the indictments "were related and alleged to be part of a common scheme or plan," there is no evidence that the offenses were "jointly planned or the commission of one offense necessarily requires the commission of the other." *United States v. Hazelwood*, 398 F.3d 792, 797 (6th Cir. 2005) (citing *United States v. Irons*, 196 F.3d 634, 638 (6th Cir.1999)).  For example, one of his arrests was for perjury that occurred on June 16, 1981.  His next arrest  was for grand larceny, possession of a check with a forged certification on December 17, 1981.  There is no obvious connection between these two offenses, and Gale has failed to connect them with evidence in the record.  It is Gale's burden to show the relatedness of the offenses, *Hazelwood*, 398 F.3d at 797, and he has failed to do so.

### 3.      *Attempt v. Completed Criminal Act*

Gale next argues that his criminal conduct is more appropriately characterized as an attempted, rather than completed, act.  According to him, because he never received the cars, he believed the loan transaction was not complete.  He relies upon U.S.S.G. § 2X1.1, which provides for a three-level decrease in the base-offense level for attempted (versus completed) criminal acts.

U.S.S.G. § 2X1.1(b)(1) states as follows:

> If an attempt, decrease by 3 levels, *unless* the defendant *completed all the acts* the defendant believed necessary for successful completion of the *substantive offense* or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control.

(emphasis added).

As recounted above, Gale pleaded guilty to wire fraud, not grand theft, fraudulent receipt of property, or some other theft-based offense.  The offense of wire fraud is set out in 18 U.S.C. § 1343:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than five years, or both.[7]

"To convict a defendant of wire fraud, the government must prove '(1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property.'" *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003) (quoting *United States v. Prince*, 214 F.3d 740, 747-48 (6th Cir. 2000)).

Regardless of whether Gale was able to complete his overall scheme of receiving the cars with fraudulently obtained loan proceeds, "[s]uccess of [that] scheme is not an element of the crime." *United States v. DeSantis*, 237 F.3d 607, 613 (6th Cir. 2001).  The Government set out the operative facts of Gale's wire fraud in the indictment.  Gale admitted that the indictment accurately reflected his acts.  He does not argue that he did not complete, or did not believe he completed, the facts set out in the indictment.  As those facts are sufficient to constitute the completed act of wire fraud, the district court properly denied his request for a three-level reduction under U.S.S.G. § 2X1.1(b).

### 4.      *Request for Downward Departure*

Gale claims that the district court erred in denying his request for a downward departure. In determining whether the district court correctly calculated the advisory Guidelines sentencing range, we do "not have authority to review the district court's decision not to depart downward." *Jones*, 445 F.3d at 868 (discussing *United States v. Puckett*, 422 F.3d 340, 346 (6th Cir. 2005), *cert. denied*, 126 S. Ct. 1935 (2006)).  The sole exception is where "the district court was not aware of or did not understand its discretion to make such a departure." *Id.* (quoting *Puckett*, 422 F.3d at

---

[7]Congress increased the maximum term of imprisonment to twenty years under § 903(b) of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745.

344). Here, the record reflects that the district court understood it had the discretion to depart downward. Accordingly, we cannot review the lower court's refusal to depart under the Guidelines. As explained in *Jones*, however, we can consider the bases for the underlying requests within the framework of our review of the remaining § 3553(a) factors, which we take up next. 445 F.3d at 868-69.

**C.     *Non-Guidelines Sentencing Factors***

In this circuit (as well as several other sister circuits), a sentence falling within the properly calculated Guidelines range is credited "with a rebuttable presumption of reasonableness." *Cage*, 458 F.3d at 541 (quoting *United States v. Williams*, 436 F.3d 706, 708 (6th Cir.), *petition for cert. filed* (U.S. July 11, 2006) (No. 06-5275)); *see also United States v. Lonnie Davis*, 458 F.3d 505, 510 (6th Cir. 2006) ("Within-Guidelines sentences such as Davis's are afforded a rebuttable presumption of reasonableness." (citing *Williams*)); *William Davis*, 458 F.3d at 496 ("When the district court issues a within-guidelines sentence – when the independent views of the sentencing judge and the Sentencing Commission align – we apply a presumption of reasonableness to the sentence." (citing *Williams*)). As the district court correctly calculated the applicable Guidelines range, Gale must show that the district court made sufficient errors in applying (or failing to apply) the remaining sentencing factors such that his sentence was unreasonable, even though his sentence fell within the correctly calculated Guidelines range.

**1.     *Section 3553(a)(1) – Nature and Circumstances of the Offense***

Gale has steadfastly maintained that he had every intention to repay the loans. As evidence, he points to several items, including his history as an avid collector and restorer of classic cars, the various expenses he incurred preparing for the delivery of the vehicles, and the fact that he did purchase the cars with the loan proceeds. He argues that his intent to repay makes this a unique case for which a lesser sentence is appropriate under 18 U.S.C. § 3553(a)(1).

Based on defense counsel's assertion that there was no disagreement on the point that Gale had every intention to repay these loans, and the Government's acquiescence, the district court did recognize that Gale's "intention may have been good." Yet, the district court weighed against this "good intention": (a) the fact that Gale committed wire fraud; and (b) his extensive criminal history. In particular, the district court placed considerable weight on one past offense:

> Mr. Kravitz, isn't it the fact that this is the second time, as I understand it, the second time that Mr. Gale has committed virtually the same offense? As I read the presentence investigation report, Mr. Gale in 1988 fraudulently obtained a loan from the Essex Credit Corp. based on a forged appraisal of a 1947 Cadillac. The car's value was actually considerably less than the $36,000 in the forged appraisal. He was convicted of attempted grand theft. He made a few payments on the loan and then he issued some bad checks. But he was convicted of attempted grand theft and was sentenced to serve 18 months to 3 years. He was paroled on July 2, 1993 and discharged from parole on July 5, 1994.
>
> To me it's a remarkable thing that this present offense is virtually a mirror for the prior offense that he committed: fraudulent loan applications to obtain loans to buy vintage Cadillac automobiles, as a matter of fact the same 1947 Cadillac, or that model Cadillac. Talk about good intention to pay it back at all? This is not the first time he has done this.

Gale argues that the district court should not have placed significant weight on this 1988 offense because, unlike in that past case, here he had every intention of paying back the loan. Yet, he points to no evidence from or related to the 1988 offense to distinguish it from the present one

– i.e., that he never intended to repay the 1988 loan, but did intend to repay the present one. He could have submitted, for example, sworn statements that he had not incurred similar expenses to prepare for the delivery of the Cadillac in the 1988 case. In the absence of any contrary evidence, it was certainly plausible for the district court to place greater emphasis on the similarities between the two offenses, rather than any purported differences. *See William Davis*, 458 F.3d at 496 (citing *United States v. Zapete-Garcia*, 447 F.3d 57, 59 (1st Cir. 2006) (stating that appellate review of a "chosen sentence for reasonableness" involves looking for "a plausible explanation and a defensible overall result")).

### 2.          *Section 3553(a)(1) – History and Characteristics of the Defendant*

At the time of his sentencing, Gale had suffered through several family problems. His wife had recently died from cancer, and Gale was selling his home and trying to settle his wife's foreign estate. His son was divorcing his wife, and had suffered from poor mental health. He also claimed he suffered several health problems of his own.

The district court concluded that Gale's family and health problems did not warrant a lower sentence. Gale has not shown that this was error. Other than pointing them out, he offers little to show that his family problems were so substantial as to make his sentence unreasonable, especially in light of his extensive criminal background. He cites no case law in support of his position. In *Cage*, this court affirmed a defendant's sentence of thirty-seven months incarceration. 458 F.3d at 544. The defendant had argued that her sentence was unreasonable, in part, because of its likely impact on her family, including her young children. *Id.* at 539, 544. We noted that the district court fully considered the effect the sentence would have on the defendant's family, and concluded that the sentence was reasonable. *Id.* at 544.

Here, Gale's wife was deceased at the time of sentencing. While her death is, of course, unfortunate, his imprisonment will obviously not be a burden to her, as it would have if she were still alive and suffering from cancer. While he may be suffering significant grief, he does not suggest or otherwise explain why such grief is an adequate reason for a lesser sentence. Likewise, while his son may be struggling with mental health problems, Gale has offered no evidence or other reasoned basis to suggest that his son will be significantly burdened by his father's imprisonment for eighteen months. As noted in *Cage*, "tragedy is a regular consequence of criminal conduct," both for the victims and the defendant's own family. *Id.* at 539.

As for his own health, Gale refers to current problems with high-blood pressure, as well as his prostate and eyes. Yet, most of the medical records he submitted referred to his wife's health problems. The only medical record related to his own health is one dated April 6, 2004, regarding a retinal tear in the left eye, and the development of a similar tear in the right eye. There is no evidence in the record that Gale suffers from any serious medical condition for which he could not receive adequate treatment in prison.

### 3.          *Section 3553(a)(2) – Deterrence and the Seriousness of the Offense*

Gale next argues that his loss of business assets and income, coupled with his good conduct since the offense and the monies that he has had to pay, have sufficiently deterred him from committing such acts in the future. 18 U.S.C. § 3553(a)(2)(B). He maintains that he has already paid serious consequences for his offense. *Id.* § 3553(a)(2)(A). Defense counsel admitted during the sentencing hearing, however, that any purported financial problems suffered by Gale were due not only to the instant offense, but also his criminal history, the health problems of his wife, and his age.

The district court did not find any basis for finding a loss of business assets and source of income, and Gale has not shown this finding to have been made in error. As for Gale's good conduct since the offense, the district court noted that during much of this period of time, Gale was

either on probation related to an earlier offense or on bond related to the present offense. It was not unreasonable for the district court to place little weight on Gale's simply doing "exactly what he has to do" under the terms of his probation and bond.

### 4.    *The Remaining Sentencing Factors*

In addition to what the district court did say on the record, Gale also takes issue with what the district court did not say. Specifically, he contends that there were several claims the district court failed to consider, including: (a) the commercially unreasonable sale of the cars by Midbanc, which counseled for a lesser sentence under 18 U.S.C. § 3553(a)(1) (as opposed to an adjustment under the Guidelines); (b) the need to avoid unwarranted disparity among defendants with similar records, 18 U.S.C. § 3553(a)(6); and (c) the appropriateness of a non-custodial sentence, 18 U.S.C. § 3553(a)(3). He also lists a number of documents that were not explicitly referenced by the district court, and argues that this is proof that the court did not consider them in fashioning his sentence.

We find no basis for remand on these claims. To enable us to review the reasonableness of a sentence, all we require of the district court is to "articulate[] its reasoning sufficiently to permit reasonable appellate review." *Williams*, 436 F.3d at 709. "[A] sentencing judge must explain to the parties and the reviewing court its reasons for imposing a particular sentence." *Jones*, 445 F.3d at 871. When a district court adequately explains *why* it imposed a particular sentence, especially one within the advisory Guidelines range, we do not further require that it exhaustively explain the obverse – *why* an alternative sentence was *not* selected – in every instance. *Jones*, 445 F.3d at 871; *see also United States v. Fernandez*, 443 F.3d 19, 30 (2d Cir.) ("[W]e will not conclude that a district judge shirked her obligation to consider the § 3553(a) factors simply because she did not discuss each one individually or did not expressly parse or address every argument relating to those factors that the defendant advanced."), *cert. denied*, 2006 WL 1880550 (U.S. Oct. 2, 2006) (No. 06-21).

Of course, there may be a case in which a district court provides little, if any, affirmative indication that it considered all of the relevant sentencing factors and evidence when it sentenced a defendant. When, on appeal, a defendant's argument and supporting evidence presents an arguably meritorious claim for a lesser sentence, but there is little to suggest that the district court actually considered it, then remand may be appropriate. *See, e.g.*, *United States v. Cunningham*, 429 F.3d 673, 679-80 (7th Cir. 2005).

We are not faced with the latter case here. The district court clearly understood its duty to consider all of the relevant factors of 18 U.S.C. § 3553(a), not just the advisory Guidelines, in fashioning Gale's sentence. It spent considerable effort in reviewing the nature and circumstances of the offense, as well as Gale's history (especially his education and past criminal conduct) and characteristics (including his family, medical condition, and age). It also considered, and expressly rejected, Gale's argument that he has already been deterred from committing future crimes, as reflected in his good conduct since the 1996 offense.

As for the arguments the district court did not expressly address, it was not required to do so. "A sentencing judge has no more duty than we appellate judges do to discuss every argument made by a litigant; arguments clearly without merit can, and for the sake of judicial economy should, be passed over in silence." *Cunningham*, 429 F.3d at 678; *see also United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006) (explaining that to comply with the obligation to consider the relevant sentencing factors, a "court need not discuss every argument made by a litigant if an argument is clearly without merit"). Gale provided no federal case law to suggest that victims of wire fraud must act in a commercially reasonable manner when trying to cut their losses. Nor did he offer sufficient evidence that Midbanc, in fact, acted commercially unreasonable. Given that he had recently defrauded the company, it was not unreasonable for it to refuse either to consider an offer from an

associate of his (especially when the record reflects that the offer was made during a joint telephone call with Gale), or to seek Gale's opinion on how best to dispose of the cars.

On the need to avoid unwarranted disparity in sentencing, what Gale misses on appeal is that he took the position below that the factor was not relevant to his case. Furthermore, the Guidelines take this circumstance into account. *See United States v. Johnson*, 445 F.3d 339, 343 (4th Cir. 2006) ("[B]y devising a recommended sentencing range for every type of misconduct and every level of criminal history, the Guidelines as a whole embrace 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" (quoting 18 U.S.C. § 3553(a)(6))). As for the appropriateness of a different sentence, the district court rejected Gale's underlying arguments for a noncustodial sentence (e.g., family and health circumstances, need for deterrence) – no more was necessary for our review.

Finally, a district court need not describe in detail or list all of the documents or other evidence it considered during sentencing. It is fair to say that if an appellate court cannot rely on a lower court to do its duty by reviewing the factual record, our system of justice will collapse of its own weight. There is a presumption in the law that a district court knows and applies the law correctly, *United States v. Buchanan*, 449 F.3d 731, 741 (6th Cir.) (Sutton, J., concurring) (citing *United States v. Ayers*, 428 F.3d 312, 315 (D.C. Cir. 2005)), *petition for cert. filed* (U.S. Aug. 23, 2006) (No. 06-6155), and a similar presumption must extend to the court's factual review of the record. Thus, without some affirmative indication in the record to the contrary (apart from the sentence imposed), we presume that a district court has reviewed the evidence provided to it. Gale has made no such affirmative showing here.

## D.     *Gale Received a Reasonable Sentence*

Our review of the record confirms that Gale received a procedurally reasonable sentence. As Gale has not shown that his within-Guidelines sentence is substantively unreasonable, we affirm his sentence of imprisonment.[8]

### III.

As for restitution, we find no error with either the propriety or amount ordered by the district court. These two matters "are subject to different standards of review." *United States v. Johnson*, 440 F.3d 832, 849 (6th Cir.), *cert. denied*, 2006 WL 1139577 (U.S. Oct. 2, 2006) (No. 05-10617). The court "review[s] *de novo* whether a restitution order is permitted under the law. If it is, then the amount of restitution ordered is reviewed under the 'abuse of discretion' standard." *Id.* (quoting *United States v. Wood*, 364 F.3d 704, 714 (6th Cir. 2004)). Gale's arguments implicating *Booker* issues "do not apply to the district court's restitution order." *Id.* (citing *United States v. Sosebee*, 419 F.3d 451, 461 (6th Cir. 2005)).

In general, a district court must order restitution from a defendant convicted "of an offense against property . . . including any offense committed by fraud or deceit" if an identifiable victim has suffered a loss. 18 U.S.C. § 3663A(a)(1),(c)(1). Gale does not dispute that he falls into this category. He instead reiterates his argument that Midbanc acted in a commercially unreasonable manner in selling the cars. As Gale has not shown either a legal requirement that Midbanc

---

[8]Gale also asserts a due-process violation. The Government waited several years to indict Gale. He argues that the pre-indictment delay violated his right to due process, and that the delay prejudiced his ability to develop evidence to support his arguments for a lower sentence (and restitution). The district court addressed the claim in a well-reasoned decision and again rejected it during the sentencing hearing. For the reasons set forth by the district court, we find that his due-process claim is without merit.

maximize its recovery or that the company in fact acted unreasonably, restitution was properly ordered.

On the district court's restitution calculation, Gale offers several arguments: (a) he paid an additional $10,000 to Midbanc; (b) Midbanc refused to cooperate in determining the amount of its loss; (c) he has already paid more than $100,000 related to the offense (more than the aggregate amount of the loans); and (d) his business partner, DeTrano, should have been liable for a portion of the loss. He maintains that the district court impermissibly shifted the burden of persuasion from the Government to him.

Gale's arguments are based on conjecture and are otherwise without merit. The PSR initially calculated the amount of restitution as follows:

```
    $60,000.00 (the amount of the loans)
 – $20,000.00 (the amount recouped by Midbanc)
 +   $3,982.06 (administrative costs incurred by Midbanc)
 –   $5,000.00 (payment to Midbanc)
 ----------------
    $38,982.06
```

Gale did not dispute the accuracy of these amounts, but did argue that he made additional payments to Midbanc. The district court adjourned the sentencing hearing to give the parties additional time to gather evidence regarding the proper amount of restitution. The Government returned with evidence of an additional $10,000 paid by Gale to the victim. The district court subtracted this amount, for a total of $28,982.06.

Gale also returned with a report of payments. As the district court recounted (and defense counsel agreed), however, the payments identified by Gale were made to persons or entities other than Midbanc. The district court considered Gale's testimony and the documents he submitted, but ultimately concluded that: (a) the documents did not show additional payments to Midbanc; and (b) Gale's testimony could not be credited upon hearing his claims and viewing his demeanor on the stand. A review of the documents and Gale's testimony confirms that the district court did not abuse its discretion in rejecting Gale's claims of an additional $20,000 in payments to Midbanc.[9]

Likewise, Gale's other arguments fail. He did not assert before the district court, either in his report regarding restitution or during the sentencing hearing, that he made efforts to contact Midbanc and was rebuffed. While the Government stated in its report that it had made telephone calls to Midbanc's president after the initial hearing, but that those calls had not yet been returned, there is no suggestion that Midbanc was somehow "refusing to cooperate" with the parties. As for his claim that he has already paid more $100,000, his counsel admitted that the payment was made to satisfy a civil judgment against him by Serradas, not Midbanc. Finally, on whether DeTrano must shoulder some of the load for repaying Midbanc, it is undisputed that he was not charged or convicted of any crime involving the fraudulent loans. This distinguishes the instant case from the one cited by Gale, *United States v. Arutunoff*, 1 F.3d 1112, 1121 (10th Cir. 1993), which involved a dispute over the proper amount and apportionment of restitution between co-defendants. Here, Gale alone pleaded guilty to fraudulently obtaining the loans equaling $60,000 – thus, it is his responsibility under 18 U.S.C. § 3663A to pay restitution for that amount, as adjusted for any related expenses, payments, and recoupment.

---

[9]The district court did not shift the overall burden of persuasion to Gale. The Government presented uncontroverted evidence of $28,982.06 owed by Gale. It was his burden of rebuttal, then, to show he made additional payments. This he failed to do.

Accordingly, there exists no sound basis for reversing the district court on its restitution order.

**IV.**

For the reasons stated above, we AFFIRM Gale's sentence.