RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0128p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

  *Plaintiff-Appellee,*

  *v.*

No. 06-4281

JAMES WITTINGEN,

  *Defendant-Appellant.*

>

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 06-00203—John R. Adams, District Judge.

Argued:  October 26, 2007

Decided and Filed:  March 27, 2008

Before:  MERRITT, ROGERS, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Henry J. Hilow, McGINTY, HILOW & SPELLACY, Cleveland, Ohio, for Appellant. Thomas M. Bauer, ASSISTANT UNITED STATES ATTORNEY, Akron, Ohio, for Appellee. **ON BRIEF:**  Henry J. Hilow, McGINTY, HILOW & SPELLACY, Cleveland, Ohio, for Appellant. Robert J. Becker, ASSISTANT UNITED STATES ATTORNEY, Akron, Ohio, for Appellee.

  McKEAGUE, J., delivered the opinion of the court, in which ROGERS, J., joined. MERRITT, J. (pp. 6-7), delivered a separate dissenting opinion.

_____

## OPINION

_____

  McKEAGUE, Circuit Judge.  Defendant James Wittingen pleaded guilty to one federal count of distributing methamphetamine, a controlled substance.  Finding that the applicable sentencing range under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") was higher than that proposed by either Wittingen, the Government, or the probation office, the district court sentenced Wittingen to fifty-seven months of imprisonment.  Wittingen appeals, arguing that his sentence was unreasonable under *United States v. Booker*, 543 U.S. 220 (2005).

  We find no basis for reversing the sentence.  Wittingen admitted to an officer that he manufactured approximately 270 grams of methamphetamine over an eighteen-month period.  While he stated to the officer that he did not sell the drug, that assertion is belied by the fact that he sold the drug to an informant.  Moreover, he admitted to bartering the drug in exchange for manual labor

1

around his home, thereby distributing the drug. The amount of drugs manufactured and distributed was more than enough to justify the district court's Guidelines calculation. Finally, while Wittingen's personal circumstances are certainly lamentable, the circumstances are also (unfortunately) quite common in these types of cases. Accordingly, for the reasons more fully explained below, we affirm.

# I

Officers working with the federal Drug Enforcement Administration learned from an informant that Wittingen was trafficking in methamphetamine and firearms from his residence in Pierport, Ohio. They set up a controlled buy with the informant for drugs and a firearm. The informant purchased under five grams of methamphetamine and a loaded Colt revolver from the Defendant.

Based on this information, the officers sought and received a search warrant for the Defendant's residence. Upon execution of the warrant, the officers found an active methamphetamine lab in his garage. They arrested Wittingen, his son, and several others.

In a sworn affidavit, the investigating officer stated that Wittingen was informed of his *Miranda* rights. Wittingen advised officers that he understood his rights and wanted to make a statement. He told them that he had been cooking methamphetamine for about eighteen months. He stated that he usually cooked the drug once per month and that each cook yielded approximately fifteen grams of the drug. He also told them that he did not sell the drug, but that he would sometimes give it to people who helped him with manual labor at his residence.

A federal grand jury indicted Wittingen on four counts of drug-related offenses. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the Defendant entered into a plea agreement with the Government in which he agreed to plead guilty to one count of knowingly and intentionally distributing a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). The parties agreed that the amount of drugs involved equaled between 2.5 and five grams, but Wittingen acknowledged that the Government could prove additional facts evidencing his distribution of methamphetamine in the Northern District of Ohio.

Before accepting the plea, the district court informed Wittingen that it was possible that the court might impose a harsher sentence than the one anticipated in the agreement. Wittingen responded that he understood. After further reviewing the plea agreement, the statutory maximum sentence that Wittingen could receive, and other matters, the district court asked if he still wanted to plead guilty. Wittingen confirmed that he did. The district court accepted the guilty plea as to the single count and dismissed the remaining counts.

Prior to sentencing, the probation office prepared a Presentence Report (the "PSR"). For purposes of the advisory Guidelines range, the office suggested a base-offense level of fourteen for a quantity of drugs more than 2.5 but less than five grams, a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm, a two-level reduction under U.S.S.G. § 3E1.1.(a) for acceptance of responsibility, and a one-level reduction under U.S.S.G. § 3E1.1(b) for timely notice of his guilty plea. With a criminal history category of I, the office calculated a Guidelines sentencing range of twelve to eighteen months,[1] which was consistent with the parties' plea agreement.

At the sentencing hearing, the district court rejected the PSR's suggested Guidelines range. The court discussed various circumstances supporting a higher sentence, including: (a) the

---

[1] The office used the 2005 version of the Guidelines manual.

Defendant operated a methamphetamine lab; (b) the Defendant admitted to manufacturing and distributing the drug over a lengthy period of time; (c) the risks to the community posed by methamphetamine labs, specifically to officers who are called upon to dismantle the labs; and (d) Wittingen's involvement of his son in the criminal activities. The court then gave the following alternate rationales for its sentence:

> Pursuant to the Sentencing Reform Act of 1984, consistent with the statements that I have made on the record in this particular matter, I will follow the advisory, what I believe to be the advisory guideline range standards for the amount of drugs which the defendant has admitted he cooked over a period of a year and a half, and actually not give him, not assess the full amount. But assuming even one year's amount of drugs that he produced methamphetamine would place him at offense level 26. Two level enhancement for the firearm. Three levels for acceptance, which would be a 25. Offense level 1. And I am imposing a term of 57 months,[2] [sic] will be the court's order in this particular matter.

> I will note that I make the same sentence, in the alternative as a variance, based upon all what have I [sic] stated earlier as it related to the nature of the circumstances of this offense, and all the other matters I've stated earlier for the record in this case.

Sent. Tr. at 16-17. In addition to recalculating the Guidelines range and explaining how it would arrive at the same sentence with a sentencing variance, the district court earlier indicated that a departure was justified under U.S.S.G. § 5K2.0(a)(3). *Id.* at 11-12. Under any one of these three scenarios, the district court reasoned, a fifty-seven-month sentence was justified.

## II

### A.     *Judicial Factfinding at Sentencing*

Pursuant to 18 U.S.C. § 3553(a), the district court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a)(2). Section 3553(a)(2) provides that the district court must consider "the need for the sentence imposed":

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B) to afford adequate deterrence to criminal conduct;

> (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

The district court need not explicitly refer to each of the factors of § 3553(a). Yet, "there must be sufficient evidence in the record to affirmatively demonstrate the court's consideration of these factors." *United States v. Thompson*, 515 F.3d 556, 560 (6th Cir. 2008) (internal quotation marks and brackets omitted). Moreover, while the Guidelines are advisory, the district court must correctly calculate the Guidelines range, *United States v. Gale*, 468 F.3d 929, 934 (6th Cir. 2006), *cert.*

---

[2]With an adjusted-offense level of twenty five and criminal history category I, the advisory sentencing range equaled fifty-seven to seventy-one months.

*denied*, 127 S. Ct. 3065 (2007), and then consider that range along with the other relevant § 3553(a) factors in fashioning a sentence, *United States v. McBride*, 434 F.3d 470, 476 (6th Cir. 2006).

On appeal, our role is more circumscribed. We review a defendant's sentence for reasonableness under an abuse-of-discretion standard, regardless of whether the sentence falls inside or outside of the Guidelines range, *Gall v. United States*, — U.S. — , 128 S. Ct. 586, 591 (2007), although we do apply a presumption of reasonableness to a within-Guidelines sentence, *Gale*, 468 F.3d at 937. There are two primary aspects of our reasonableness review. We must first determine whether the district court made any procedural error, such as miscalculating the applicable Guidelines range. *Gall*, 128 S. Ct. at 597. If the sentence is procedurally sound, we then consider whether it is substantively reasonable. *Id.*

While Wittingen presents his appeal as four separate claims, the question underlying three of his claims is whether the district court committed reversible error in finding by a preponderance of the evidence that he manufactured and distributed at least 180 grams of methamphetamine, thereby increasing the sentencing range beyond the one agreed to by the parties and suggested in the PSR. We look first to the district court's initial basis for the higher sentence—the recalculation of the applicable Guidelines range based on the higher quantity involved. "'Legal conclusions regarding the application of the Guidelines are reviewed de novo.'" *Gale*, 468 F.3d at 934 (quoting *United States v. Foreman*, 436 F.3d 638, 640 (6th Cir. 2006)). "The district court's findings of fact on sentencing, however, 'will not be set aside unless clearly erroneous.'" *Id.* (quoting *United States v. Gardner*, 417 F.3d 541, 543 (6th Cir. 2005)); *see also Gall*, 128 S. Ct. at 597 (explaining that a district court would commit procedural error if it selected "a sentence based on clearly erroneous facts").[3]

As this court has made clear on numerous occasions since the Supreme Court's *Booker* decision, judicial factfinding under an advisory Guidelines regime does not violate the Sixth Amendment. *See, e.g.*, *Thompson*, 515 F.3d at 568 ("The Supreme Court has sanctioned judicial factfinding, even factfinding that *enhances* rather than reduces a defendant's sentence, so long as the factfinding does not result in a sentence beyond the statutory maximum." (emphasis in original)); *United States v. Gardiner*, 463 F.3d 445, 461 (6th Cir. 2006) ("[A] district court may make its own factual findings regarding relevant sentencing factors, and consider those factors in determining a defendant's sentence."); *United States v. Stone*, 432 F.3d 651, 654-55 (6th Cir. 2005) ("*Booker* did not eliminate judicial fact-finding."), *cert. denied*, 127 S. Ct. 129 (2006). When engaging in this fact-finding, district courts employ the "same preponderance-of-the-evidence standard that governed prior to *Booker*." *United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir. 2006).

We find no clear error regarding the district court's drug-quantity calculation. Although the Government agreed in the plea agreement to hold Wittingen accountable for only between 2.5 and five grams, it also stated, and Wittingen conceded, that it could prove other facts of distribution within the federal district. Under Rule 11(c)(1)(B), the district court was not bound by the amount of drugs stipulated in the plea agreement, and this was made clear to Wittingen prior to the district court's acceptance of his guilty plea. According to the unrebutted, sworn testimony of the investigating officer, Wittingen admitted to cooking methamphetamine for approximately eighteen months, which resulted in about 270 grams of the drug. (This was also identified in the PSR, to

---

[3]The dissent relies upon 18 U.S.C. § 3742(e) for support of a de novo standard of review. The Supreme Court has, however, invalidated that entire provision. *Booker*, 543 U.S. at 259; *see also Gall*, 128 S. Ct. at 594. In any event, we agree as a general principle that mixed questions of law and fact involving the Guidelines are reviewed de novo. *United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005); *see also United States v. Maken*, 510 F.3d 654, 657 (6th Cir. 2007) (applying de novo review to a question involving "the application of law to fact" under the Guidelines). The district court's recalculation of the Guidelines range, however, was entirely fact-based, *see infra*, and we review the factual finding only for clear error, *see supra*.

which Wittingen had no objection.)  He admitted to the arresting officer that he used the drug as barter in exchange for manual labor—i.e., he admitted to distributing it.  While he stated that he did not "sell" the drug, that assertion was severely undercut by his admission in his plea agreement that he did, in fact, sell over two grams of the drug to the informant.  In light of Wittingen's admissions and in the absence of any countervailing evidence or arguments, we find that the district court did not clearly err by attributing 180 grams of methamphetamine to Wittingen.

Accordingly, the district court had ample basis for recalculating Wittingen's Guidelines range and attributing to him a higher quantity of drugs than that to which the parties had earlier agreed.  The actual sentence of fifty-seven months was at the bottom of the resulting Guidelines range and, therefore, is presumed to be reasonable.  While the district court gave alternate rationales for the sentence it imposed (i.e., as a variance or upward departure from the original proposed range), we need not consider those because we find sufficient authority and support for the Guidelines recalculation.[4]  To the extent that the dissent focuses on those alternate rationales rather than the grounds for recalculating the Guidelines range, the dissent's argument misses its mark.

**B.**　　*Remaining Sentencing Factors*

In his fourth claim, Wittingen argues that the district court failed to consider adequately several of his personal circumstances, including his age (forty-nine years), health problems (e.g., colon cancer, degenerative-joint disease, serious drug problem), lack of any prior felonies, low quantity of drugs attributed to him by the Government, and his acceptance of responsibility and cooperation with the Government.  There are, however, multiple problems with this argument. First and foremost, he did not specifically raise these arguments during the sentencing hearing, other than (arguably) his acceptance of responsibility and his serious drug problem. Sent. Tr. at 4-5; *see Rita v. United States*, 127 S. Ct. 2456, 2470 (2007) ("Rita did not make this argument below, and we shall not consider it.").  Moreover, all of these circumstances were included in the PSR and the district court stated that it had read and considered that report. Sent. Tr. at 6.  The district court then went on to explain why it rejected the low quantity of drugs for a higher one.  Finally, even had the Defendant raised the other matters during the hearing, he has not shown that they lie outside the "type of regular, recurring circumstance[s]" for which district courts need not discuss absent some showing of "an exceptional hardship." *United States v. Pettie*, No. 06-3458, 2007 WL 1786821, at *4 (6th Cir. June 19, 2007) (unpublished); *cf. Rita*, 127 S. Ct. at 2468 (explaining that a lengthy explanation by the district court is not necessary when presented with a "typical" case).  Based on our review of the record, we are satisfied that the district court adequately considered all of the relevant sentencing factors set out in § 3553(a).

## III

For the foregoing reasons, we AFFIRM.

---

[4]We note that Federal Rule of Criminal Procedure 32(h) requires that "[b]efore the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure." Wittingen does not argue on appeal that the district court violated the notice requirements of Rule 32(h), nor did he object at the end of the sentencing hearing.  Accordingly, we will not address the issue further. *Cf. Renkel v. United States*, 456 F.3d 640, 642 n.1 (6th Cir. 2006) ("Issues which were raised in the district court, yet not raised on appeal, are considered abandoned and not reviewable on appeal." (quoting *Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998))).

---

**DISSENT**

---

MERRITT, Circuit Judge, dissenting. In this sentencing appeal, the sentencing court below at the beginning of the sentencing hearing said:

> But the court is of the opinion in this particular matter that *both a departure and a variance is certainly called for* under the facts of this particular case. And I'll set forth my reasons why.

> An *upward departure* certainly is called for in this particular matter, and as well as a variance, under the circumstances.

(J.A. 71, emphasis added.)

Throughout the sentencing colloquy, the trial judge repeatedly made it clear that his theory of sentencing in this case was the need for a "departure found under 5 K2.0, subparagraph A, of the Guidelines." (J.A. 75.) He gave as his reasons for the three-year "upward departure" the following:

> 1. "Those addicted to methamphetamine, will do anything to feed their habit."

> 2. "He needs drug treatment, and I am not certain that one year, or 12 to 18 months, under these advisory guidelines or the plea agreement, will be adequate time for the treatment . . . ."

> 3. "I would certainly . . . make reference to the fact that statutorily, the statutory penalty for this offense is 20 years, is the maximum that could be imposed. And I would find the sentence in the advisory range of 12 to 18 months to be disparate, simply because of the wide range and divergence between the statutory maximum . . . ." (J.A. 77-78.)

The sentencing judge and my colleagues disagree with the Department of Justice and the defendant in the plea agreement that the defendant did not sell or distribute much of the meth he manufactured. They find as a fact without any evidence that I can find in the record supporting it that the defendant sold 180 grams of meth. They also disagreed with the Department of Justice that the defendant could be cured or rehabilitated from his drug addiction within the 18 months provided in the plea agreement and believe that an additional three years was necessary to cure the addiction and rehabilitate the defendant. Contrary to the sentencing judge's conclusion, the government believed that a 5-year sentence would be much "greater than necessary" under § 3553 to serve the purposes of rehabilitation and deterrence and so advised the court in the plea agreement.

In situations such as this one where there is a large deviation from a plea agreement — in this case a tripling of the sentence — plus a sentence characterized throughout by the sentencing judge as an "upward departure," the sentencing guidelines provide that "the Court of Appeals shall review *de novo* the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(c)(1), (e). The Supreme Court has in no way overruled this congressional concept, as my colleagues insist. It only makes sense for the court of appeals to give *de novo* review when the district court both departs upward and triples the plea agreement sentence. Applying *de novo* review, I would remand the case to the district court with instructions to sentence the defendant within the plea agreement. I see no reason to disagree with the government that the defendant could not be rehabilitated and cured of his addiction within 18 months, and the sentencing judge and my colleagues give no reason whatever for their disagreement. I do not agree with them that the

maximum sentence of 20 years is a factor that should be taken into account in this sentencing case. That is irrelevant, and constitutes reversible error in and of itself. Nor do I find in the record any evidence whatever that the defendant sold or distributed much of the meth he manufactured. The defendant is simply a poor soul with many physical ailments who is addicted to meth. Providence would not insist on the law's vengeance in this case; and I do not understand what my colleagues and the sentencing judge are avenging by tripling the sentence that the government prosecutor believed was fair and reasonable.

Of course, as I have said now in many other cases, I do not agree that the sentencing judge or the courts of appeals are empowered after the *Blakely-Booker-Cunningham* line of cases to make findings of fact beyond the facts of the jury verdict or guilty pleas — new fact findings that ratchet up the sentence. *See United States v. Thompson*, 515 F.3d 556 (6th Cir. 2008); *United States v. Phinazee*, 515 F.3d 511 (6th Cir. 2008); *United States v. Sedore*, 512 F.3d 819 (6th Cir. 2008); *United States v. Sexton*, 512 F.3d 326 (6th Cir. 2008). This case is one more example of American "exceptionalism": the fact that we continue to live through a period of harsh, irrational punishment, which has now produced a national prison population of 2.3 million — by far, the highest in the world — and an enormous increase in prison costs in the last 20 years since sentencing guidelines at the state and national levels went into effect.