**Alma LLESHANAKU, Petitioner,**

v.

**John ASHCROFT, Respondent.**

No. 03–1589.

United States Court of Appeals,
Seventh Circuit.

Argued April 20, 2004.

Decided May 11, 2004.

Stephen D. Berman, Chicago, IL, for Petitioner.

George P. Katsivalis, Department of Homeland Security, Office of the District Counsel, Chicago, IL, Richard M. Evans, Patricia A. Smith, Department of Justice, Civil Division, Immigration Litigation, Washington, DC, for Respondent.

Before EASTERBROOK, EVANS, and WILLIAMS, Circuit Judges.

### ORDER

Alma Lleshanaku claims that members of a criminal gang in Albania harassed her, and even attempted to kidnap her, for the purpose of forcing her into prostitution in another country. After coming to the United States, Lleshanaku filed for asylum, but an IJ denied her application and the BIA affirmed. Lleshanaku's allegations of attempted trafficking are troubling, especially given that this problem has been highlighted in State Department reports on Albania. But we deny her petition for review because the evidence that she presented does not compel a conclusion contrary to the IJ's denial of asylum.

To summarize the facts, Lleshanaku and her mother (who came to the United States shortly after her daughter and has an asylum application that is apparently still pending in separate proceedings) testified at Lleshanaku's removal hearing about numerous incidents in Albania in which young men, whom the pair identified as members of an organized criminal gang, harassed Lleshanaku. These incidents be-

gan with relatively innocuous (albeit disturbing) encounters but culminated in what Lleshanaku characterizes as an attempted kidnapping. The IJ accepted their testimony as credible.

The trouble began when Lleshanaku was only 12 years old (she is now 20). On her way to and from school, young men would stop her, suggest to her that she could "make money somewhere else," and even threaten her with kidnapping and rape when she ignored them. On occasion, she would stay home from school because she was scared of these encounters. Young men started calling Lleshanaku's house and threatened to take her away from her family. These men would even come to her home to inquire about her, whereupon Lleshanaku's father would answer the door while she and her mother hid.

Lleshanaku was disturbed by these encounters, in part, because of what she had heard about criminal gangs' activities in Albania. Lleshanaku's mother testified that organized criminal activity had been widespread in Albania since the economic upheaval (failed pyramid schemes) of the mid-90s. Lleshanaku and her mother inferred that the perpetrators were members of criminal gangs because they wore nicer clothing than others and drove luxury cars. Lleshanaku and her mother also inferred, based on media reports of similar conduct, that the gang members meant to entice or even kidnap Lleshanaku for the purpose of forcing her into prostitution in another country. Her mother testified that she had heard from friends that other young women in their city had been kidnapped by gang members for this purpose, although she did not have any personal knowledge of these occurrences. Lleshanaku testified that gang members did not bother her friends because, unlike her, they had older relatives with gang affilia-

tions who could protect them from such encounters. The State Department's 1999 and 2000 Country Reports for Albania corroborate that trafficking of women and children by criminal gangs for the purpose of forced prostitution was a significant problem in Albania.

These earlier encounters culminated in what Lleshanaku characterizes as an attempted kidnapping. While Lleshanaku and her mother were walking to a relative's home one afternoon in early 1998, gang members, some of whom Lleshanaku recognized from earlier incidents, started trailing the pair in their cars. The young men, in a group of four cars by this time, eventually circled Lleshanaku and her mother in a town square. The men began yelling at Lleshanaku and her mother, but the men did not get out of their cars. Lleshanaku and her mother managed somehow to escape down a narrow street to a relative's home, where they hid for four hours. Her mother identified the perpetrators as members of the Tan Kateshi gang. After this incident, gang members phoned Lleshanaku's home on an hourly basis. But the family did not report this incident (or any of the other incidents apparently) to the police because they believed that the police were scared of the gangs. Shortly thereafter, Lleshanaku obtained a student visa to travel to the United States and later applied for asylum here.

Following the removal hearing, the IJ denied Lleshanaku's asylum application, offering three main reasons. First, the IJ concluded that the gang members' conduct did not rise to the level of persecution (as is necessary for asylum); rather, the cited incident in the town square seemed to him more like harassment than an attempted kidnapping. Second, the IJ found that the conduct was not particularized to Lleshanaku because "[m]ore than likely, these

organized criminal gangs harass many people similarly." Finally, the IJ determined that Lleshanaku did not have a well-founded fear of future persecution because kidnapping of young women in Albania was rare and she "had show[n] herself to be resistant" to the more common tactic of luring young women with false promises of easy money. The BIA affirmed and adopted the IJ's decision, so we review the IJ's reasoning. *Oforji v. Ashcroft,* 354 F.3d 609, 612 (7th Cir.2003). Lleshanaku also applied for withholding of removal, but we focus solely on her application for asylum because withholding of removal requires an even stronger showing by an applicant. *Ahmed v. Ashcroft,* 348 F.3d 611, 615 (7th Cir.2003).

Asylum may be granted to an alien who is unable or unwilling to return to her home country because of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). A denial of asylum must be upheld if supported by substantial evidence; legal conclusions are reviewed *de novo. Ahmed,* 348 F.3d at 615. To reverse, this court must conclude that the evidence *compels* a conclusion contrary to that which the IJ reached. *Elias–Zacarias,* 502 U.S. at 481 n. 1, 112 S.Ct. 812. *See, e.g., Dandan v. Ashcroft,* 339 F.3d 567, 572–74 (7th Cir.2003) ("We may not reverse the [IJ's] determination simply because we believe it was wrongly decided, but rather we must be compelled by the evidence to reach that conclusion.... This is a high standard and one that is properly difficult to meet without powerful and moving evidence.").

The main thrust of Lleshanaku's appeal is that substantial evidence does not support the IJ's conclusion that the gang members' conduct did not rise to the level of persecution. We disagree, however. The evidence that Lleshanaku presented does not compel the conclusion that the gang members' conduct constituted persecution (or gives rise to a well-founded fear of future persecution), which would qualify her for asylum, rather than mere harassment, as the IJ found. Sexual assault may constitute persecution if carried out on account of a protected ground, *see, e.g., Angoucheva v. INS,* 106 F.3d 781, 790 (7th Cir.1997), but do the threats of kidnapping and sexual assault that Lleshanaku recounted constitute persecution or give rise to a well-founded fear of future persecution? The answer is not obvious. *Compare Ahmed,* 348 F.3d at 616 ("[U]nfulfilled threats are generally insufficient to establish past persecution."), *and Mousa v. INS,* 223 F.3d 425, 430 (7th Cir.2000) (explaining that threatening phone calls do not constitute persecution "unless they rise to extreme levels"), *and Boykov v. INS,* 109 F.3d 413, 416 (7th Cir.1997) (explaining that, although threats of "immediate and menacing nature" might constitute persecution, finding of no past persecution proper where threats were not acted upon), *with Roman v. INS,* 233 F.3d 1027, 1035 (7th Cir.2000) (holding that puncturing of tires, loosening of lug nuts, and anonymous phone calls rose above harassment because perpetrators attempted to follow through on their threats), *and Mitev v. INS,* 67 F.3d 1325, 1330–31 (7th Cir. 1995) (explaining that conduct must be reviewed in context to ascertain whether perpetrators have authority to carry out threats).

The rule that we distill from this collage of cases is that threats may constitute persecution, or give rise to a well-founded fear of future persecution, if the perpetrators have the ability and apparent inclination to carry through on their threats or actually attempt to do so. Here, the inci-

dent in the town square could be seen as an attempted kidnapping, as Lleshanaku urges, and thus could constitute persecution. But the evidence also supports the conclusion that the gang members were trying merely to scare Lleshanaku. For example, it seems unlikely that the two women would have been able to elude the four cars full of gang members if they actually meant to kidnap Lleshanaku during this incident (or any other encounter). As this court has stated, if evidence supports a conclusion "either to grant or deny asylum ... it cannot be an abuse of discretion to choose one outcome over another, even if we would have come to a different conclusion." *Mousa,* 223 F.3d at 430. Here, the evidence does not necessarily compel the conclusion that the gang members' threatening actions rose to the level of persecution, and the IJ's conclusions with respect to persecution are supported by substantial evidence.

Although not addressed by either of the parties, we note an additional problem with Lleshanaku's claims. Her claims are based on the sort of criminal racketeering that almost all governments have trouble controlling, as opposed to the type of government conduct on which most grants of asylum are based. The IJ and the parties appear to have assumed (by lack of discussion) that the requirement of government acquiescence in the alleged persecution by private persons, *see Galina v. INS,* 213 F.3d 955, 958 (7th Cir.2000), has been met, presumably because the Albanian government is either unwilling or unable to control the criminal gangs' activities. The 1999 and 2000 State Department Country Reports that were included in the agency record corroborate that the Albanian authorities have had difficulty controlling gangs' trafficking operations. But this court has previously indicated its disinclination to accept an asylum claim based on persecution by private persons where the

applicant did not even attempt to seek police protection, just as the Lleshanaku family failed to do. *See Roman,* 233 F.3d at 1027.

Furthermore, as the Supreme Court has emphasized, *see Elias–Zacarias,* 112 S.Ct. at 816, an applicant for asylum must show that they were persecuted because of their membership in a protected group. Asylum is not available if the applicant's claim is based on danger that affects a whole population in a "relatively undifferentiated way." *Ahmed,* 348 F.3d at 619. Lleshanaku is claiming persecution "on account of" her being a member of a particular social group–as she styles it, young women in Albania without male protection. The IJ seems to have implicitly rejected this connection by concluding that the gang members' conduct was not particularized to Lleshanaku.

This court has accepted as the test for defining a qualifying social group whether members share a "common, immutable characteristic" that they cannot or should not be required to change. *Lwin v. INS,* 144 F.3d 505, 511–12 (7th Cir.1998). Certainly, Lleshanaku cannot change the fact that she does not have any male relatives with gang affiliations who could protect her. Furthermore, Lleshanaku's account of repeated contact by gang members, some of whom she recognized from earlier encounters, supports the conclusion that gang members targeted her. *Cf. Hengan v. INS,* 79 F.3d 60, 63 (7th Cir.1996) (holding that petitioner's fears rose above concerns of general population because threats were directed to her personally). And this court has recognized qualifying social groups that were defined in part by gender. *See Yadegar–Sargis v. INS,* 297 F.3d 596, 603 (7th Cir.2002) (recognizing as qualifying social group Christian women opposed to wearing Islamic garb). But the *Yadegar* example seems inapposite be-

cause the social group recognized in that case was also defined by a political or religious belief. In contrast, Lleshanaku's claim seems to draw upon just one manifestation of a larger crime problem that Albania faces and, thus, is not the type of conduct for which asylum protection is normally extended. *See Kharkhan v. Ashcroft*, 336 F.3d 601, 605 (7th Cir.2003) ("[Petitioner's] concerns that removal . . . [would] expose her to the dangers of an uncontrolled criminal element, however justified as reasons for desiring to remain here, do not amount to a well-founded fear of persecution on the basis of any of the protected grounds."); *Vatulev v. Ashcroft*, 354 F.3d 1207, 1209 (10th Cir.2003) (denying petition where petitioner did not distinguish alleged persecution from acts of "common criminality").

Thus, Lleshanaku's petition for review is DENIED.