Amarjit K. MANN, a/k/a Amarjit Kaur Maan, f/k/a Manjinder Pandhar; Pritpal Singh Mann, a/k/a Pritpal Singh Maan, f/k/a Jagmanroop Pandhar, a minor by and through Amarjit Kaur Mann, his parent and legal guardian, Petitioners,

v.

The ATTORNEY GENERAL OF THE UNITED STATES; Department of Homeland Security, as Successor in Interest to Immigration and Naturalization Service,[1] Respondents.

No. 03–3338.

United States Court of Appeals, Third Circuit.

Submitted pursuant to Third Circuit LAR 34.1(a) on Feb. 10, 2005.

Decided Feb. 25, 2005.

 

1. Caption amended pursuant to Fed. R.App.      Pro. 43(c).

Stephen A. Traylor, Traylor & Traylor, Princeton, NJ, Bruce Leichty, Clovis, CA, for Petitioners.

Douglas E. Ginsburg, John D. Williams, Margaret Perry, Jacqueline R. Dryden, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondents.

Before BARRY, FUENTES, and VAN ANTWERPEN, Circuit Judges.

## OPINION OF THE COURT

FUENTES, Circuit Judge.

Petitioners Amarjit Kaur Mann ("Mann") and her son Pritpal Singh Mann appeal the Board of Immigration's (BIA) affirmance of a decision by an immigration judge (IJ) denying their claims to asylum, withholding of removal, and protection under the Convention against Torture (CAT). Because the IJ's decision was supported by substantial evidence, and because Mann did not exhaust her CAT claim before the BIA, we will deny the petition for review.

## I.

As we write only for the parties, we recite only the essential facts. Mann and her son are natives and citizens of India. Mann is educated, married and has three children: two daughters and a son. The IJ found that Mann's husband's family often beat Mann and severely mistreated her in other ways. Her in-laws also repeatedly extorted money from her parents, who complied with her in-laws' demands out of fear for Mann's welfare if they did not comply.

Mann also alleges that her mother-in-law killed her newborn daughter (because of the child's sex) within minutes of birth. The IJ found that, while Mann believes her allegations to be true, the actual cause of the child's death has not been established. The IJ also found that Mann believed she was held overnight by the local police after she reported the alleged murder to them because they were bribed by her influential in-laws. But again, the IJ found that the actual cause for her detention had not been established.

Mann continued to be severely mistreated after she returned to her in-laws' house, after her detention. At one point she managed to leave the house with her children and returned to her parents' home. Mann alleges that her in-laws threatened her brothers and took her children back to their home. After local village councils intervened and assured her that her mother-in-law would no longer mistreat her, Mann returned to her in-laws' house.

Mann's mother-in-law continued to mistreat her. Finally, with the help of Mann's sister-in-law, Mann's mother-in-law allegedly came close to setting Mann on fire in her kitchen and was prevented from doing so only due to neighbors' intervention. After this incident, Mann escaped in the

night with her son; she did not take her daughters, who slept in the same room as her mother-in-law. She resided elsewhere in India with friends and family for several months after her escape from her in-laws' house. She did not file for divorce or seek further assistance from the local police. At no time did she contact the national police or police from another region in India.

Mann thereafter attempted to enter the United States with someone else's passport. The former Immigration and Naturalization Service (INS) charged Mann with inadmissibility for falsely claiming to be a United States citizen and for lack of a valid immigrant visa or travel document. *See* 8 U.S.C. § 1182(a)(6)(C)(ii); 8 U.S.C. § 1182(a)(7)(A)(i)(I). The INS also charged her son with inadmissibility as a person likely to become a public charge and an immigrant not in possession of valid immigrant visa or travel document. *See* 8 U.S.C. § 1182(a)(4); 8 U.S.C. § 1182(a)(7)(A)(i)(I). Mann conceded their inadmissibility but argued before the IJ that they qualified for asylum, withholding of removal and protection under CAT. She appealed his adverse decision to the BIA, and now appeals the BIA's order affirming the IJ.

## II.

A grant of asylum under § 1158(b)(1) of the Immigration and Nationality Act (INA) allows an otherwise removable alien to stay in the United States. The Attorney General "may" grant asylum to an alien who demonstrates that she is a refugee, defined as a person unable or unwilling to return to the country of that person's nationality or habitual residence because of past persecution or because of a well-founded fear of future persecution on account of his race, religion, nationality, membership in a particular social group, or political opinion. *See* I.N.A. § 208(b)(1), 8 U.S.C. § 1158(b)(1); 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). In order to establish eligibility for asylum on the basis of past persecution, an applicant must show: (1) an incident, or incidents, that rise to the level of persecution; (2) that is on account of one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either unable or unwilling to control. *See Gao v. Ashcroft,* 299 F.3d 266, 271–72 (3d Cir.2002). We have jurisdiction over each of Mann's claims under § 242(a)(1) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1252(a)(1) (2000), which provides the exclusive procedure for judicial review of all final removal orders.

"Whether an asylum applicant has demonstrated past persecution or a well-founded fear of future persecution is a factual question, which we review under the substantial evidence standard." *Mulanga v. Ashcroft,* 349 F.3d 123, 131 (3d Cir.2003). "The BIA's finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft,* 242 F.3d 477, 483–84 (3d Cir. 2003) (en banc).

■ The government argues that Mann may not now argue that she belongs to a persecuted social group, i.e. "young married women in India unable to escape customary in-law domination," because she failed both to specify the statutory grounds for asylum in her application and to define her alleged social group in her testimony. While a petitioner might be barred from advancing a new claim of persecution based on membership in a group different from that in which she claimed membership during the administrative proceedings, Mann is not barred from pursuing her asylum claim in this case due to a failure to specify the particu-

lar nuances of the social group to which she belonged in India. Although the IJ's reference to her claim as one for "political asylum" might be read to imply that she was basing her claim on persecution based on political opinion, Mann's allegations make obvious that Mann was claiming persecution based on membership in a social group and the IJ, at least, appears not to have been troubled by her failure to articulate the contours of her social group more precisely.

■ Nevertheless, Mann's asylum claim must fail for just the reasons suggested by the IJ. Mann failed to show or persuade the IJ that local police authorities either directly persecuted her or were unwilling or unable to prevent her in-laws from harming her. Even assuming her distrust of local authorities was warranted, Mann could have turned to police outside of the villages in which the alleged persecution took place, or national authorities. But Mann failed to report her last encounter with her mother-in-law, in which she was almost killed, to anyone. Nor did she seek protection or assistance of any kind from any authorities in India other than the local police whom she claims were corrupted by her in-laws.

Finally, the IJ appears reasonably to have concluded, notwithstanding Mann's claim that women who live alone in India are likely to be raped and killed, that as an educated woman with teaching experience, Mann could divorce her husband, possibly gain custody of her children, and/or relocate within India, away from her in-laws, without fear of government persecution. As Mann has failed to show either past persecution or a well founded fear of future persecution, he is not entitled to a presumption of future persecution. *See Mulanga*, 349 F.3d at 132. We therefore need not decide whether the government

must rebut such a presumption, and/or whether it already has.

### III.

Mann also appeals the IJ's denial of her claims for withholding of removal and protection under CAT. It follows from our denial of Mann's asylum claim that her claim for withholding of removal must also fail. *Id.*

The government argues that Mann waived her CAT claim by failing to argue it before the BIA. Mann's Notice of Appeal does not specifically refer to CAT, but it does not specifically refer to asylum or withholding of removal either. Because the only specific factual conclusions Mann did appeal are also relevant to her CAT claim, it would not have been improper for the BIA to construe the Notice to include an appeal of Mann's CAT claim.

■ However, the BIA did not construe the Notice of Appeal before it this way. The BIA apparently read the Notice of Appeal to exclude Mann's CAT claim. The BIA observed at the outset of its decision that Mann was appealing her application for asylum and withholding of removal and that the IJ "also denied" her request for protection under CAT. Perhaps aware that it may not have addressed certain unexpressed objections to the IJ's decision, the BIA noted that Mann "did little on appeal to suggest how the Immigration Judge's decision was incorrectly decided" and pointed out that the Notice of Appeal before the BIA promised "[m]any detailed arguments" in a future brief, which ultimately consisted of a single sentence incorporating the "arguments" in the Notice of Appeal. Because Mann did not give effective notice of her appeal of her CAT claim before the BIA, it was not exhausted and we have no jurisdiction to review it now. *Cf. Bhiski v. Ashcroft*, 373 F.3d 363, 368 (3d Cir.2004) (holding that

failure to file a brief before the BIA did not bar court of appeals' jurisdiction where Notice of Appeal before the BIA "certainly was sufficient to make the BIA aware of precisely what issues were being appealed").

## IV.

For all foregoing reasons, we will deny the petition for review.