**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name:  06a0257n.06**
**Filed:  April 13, 2006**

**No. 04-3526**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| AOUA EPOUSE BIDANIS KEITA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON  PETITION  FOR  REVIEW  OF  AN |
| v. | ) | ORDER   OF   THE   BOARD   OF |
| | ) | IMMIGRATION APPEALS |
| ALBERTO GONZALES, Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

Before:  SUHRHEINRICH, ROGERS, and COOK, Circuit Judges.

COOK, Circuit Judge.  Aoua Keita, a citizen of Mali, petitions for review of a decision of

the Board of Immigration Appeals (BIA).  The BIA found that Keita failed to establish that she

suffered persecution or that the government was unable or unwilling to control her alleged

persecutor.  Because the record does not compel a contrary conclusion, we deny the petition for

review.

I

Keita conceded removability before an Immigration Judge (IJ) but sought asylum and

withholding of removal.  She testified that, after her husband died, both her family and her

husband's family began pressuring her to marry her husband's cousin, Ladji Bidanis, who already

had several other wives. She resisted this marriage on two grounds: she objects to "forced marriage" and she objects to polygamous marriage. Keita averred that, upon her refusal to marry Bidanis, the two families forced her from her home, and Bidanis began performing spells and poisoning her, resulting in swelling of Keita's limbs, weight loss, blackened fingernails, and temporary blindness. After visits to Mali hospitals proved fruitless, Keita sought medical treatment in the United States. Keita testified that, like the doctors in Mali, the United States doctors could not pinpoint the cause of her ailments. During her time in the United States, however, Keita's health improved, and she returned to Mali, where Bidanis allegedly resumed his spells. Rather than going to the police, whom she believed would not help her, Keita once again sought refuge in the United States.

The IJ noted some credibility issues, describing Keita's failure to provide objective medical evidence of her harms as "the most troubling aspect" of the case. The IJ also concluded that Keita had not established persecution on account of a protected category or that the Mali government was unable or unwilling to control Bidanis. Keita appealed the IJ's denial of asylum and withholding of removal, and the BIA dismissed her appeal. It first found that Keita failed to "meet her burden of proof that any harm she may have suffered rose to the level of persecution because she did not provide any corroborating evidence of such harm, such as letters from the doctors in the United States and Mali who allegedly treated her for her symptoms." It also determined that she did not show that her harm was inflicted by a group the government was unable or unwilling to control. Keita petitions for review of the BIA's decision.

II

We uphold the BIA's asylum decision where it is "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Mostafa v. Ashcroft*, 395 F.3d 622, 624 (6th Cir. 2005) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)), and we reverse the BIA's determination only where "the evidence not only supports a contrary conclusion, but indeed compels it." *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005) (quotation and emphasis omitted).

A.  IJ Error

Keita first alleges that the IJ erred in several respects and asks us to review the BIA's failure to correct the alleged errors.  But the BIA did not rely on any of the alleged errors in reaching its decision, and we review only the decision of the BIA.  *Zaitona v. INS*, 9 F.3d 432, 434 (6th Cir. 1993) ("[T]his court reviews the decision of the BIA, not of the IJ.").

B.  Lack of Corroborating Evidence

Keita maintains that the BIA erred in determining that she failed to prove past persecution because she did not provide corroborating hospital reports.  She advances three arguments: (1) that her testimony sufficed to prove persecution; (2) that medical reports constitute hearsay under the Federal Rules of Evidence; and (3) that the BIA overlooked "twenty-five letters from her children corroborating the abuses [she] suffered."

Keita's arguments are unavailing. First, this court has expressly approved the BIA's rule that "where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided. . . . The absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof." *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004) (quotation omitted). At her hearing, Keita testified on cross-examination that she obtained medical documents from hospitals in both Mali and the United States, but she did not provide them during her immigration proceedings because the doctors "didn't see anything." Although Keita claims that the hospitals reached "inconclusive results," hospital reports nevertheless would have provided important evidence that she sought treatment and that she manifested objective symptoms such as the black spots on her limbs and fingernails, swollen extremities, and temporary blindness. Because it is reasonable to expect Keita to provide medical records to corroborate her allegations, and Keita did not sufficiently explain her failure to present these records, this failure "can lead to a finding that an applicant has failed to meet her burden of proof." *Id.*

Keita's remaining two arguments likewise fail. Assuming that, as Keita claims, the medical reports would constitute hearsay under the Federal Rules of Evidence, these rules do not govern the admissibility of evidence in immigration proceedings. *Singh v. Ashcroft*, 398 F.3d 396, 406-07 (6th Cir. 2005). And although a few of the letters from Keita's family reference problems she faced in Mali, the letters do not compel a conclusion contrary to the one reached by the BIA, particularly

when, as the BIA pointed out, it would be reasonable to expect Keita to present her hospital records and she failed to do so.

### C. The Government's Inability or Unwillingness to Control Bidanis

The BIA also found that Keita had not demonstrated that the government was unable or unwilling to control Bidanis. Although Keita testified that "the government does not mix itself into the affairs of the community," the BIA concluded that the record did not indicate that seeking government protection would be futile or dangerous.

Keita contests this determination, citing *In re SA*, 22 I & N Dec. 1328 (2000), in which the BIA found that the record corroborated the applicant's and her aunt's testimonies that seeking governmental protection from her abusive father would have been futile and potentially dangerous. But Keita points to no record evidence to compel such a conclusion in this case. She testified that she *thought* seeking police protection would be useless, but she never offered any basis for her speculation. Although one Department of State report in the record speaks of police reluctance to enforce laws "against domestic violence," nothing compels the conclusion that the police would refuse to enforce the law in a situation involving an alleged nondomestic persecutor. *Cf. Mann v. Attorney General*, 123 Fed. Appx. 514, 517 (3d Cir. 2005) (denying petition for review because, "[e]ven assuming her distrust of local authorities was warranted, [applicant] could have turned to police outside of the villages in which the alleged persecution took place, or national authorities"); *Lleshanaku v. Ashcroft*, 100 Fed. Appx. 546, 549 (7th Cir. 2004) ("[T]his court has previously

indicated its disinclination to accept an asylum claim based on persecution by private persons where the applicant did not even attempt to seek police protection . . . .").

## D. Judicial Notice

Finally, we address Keita's request that we take judicial notice of a 2003 State Department report. As we previously discussed in an unpublished case, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 prohibits our taking judicial notice of facts outside the administrative record. *Visha v. INS*, 51 Fed. Appx. 547, 551 (6th Cir. 2002). Further, Keita seeks only to supply evidence of forced marriages in Mali—evidence that, even if admitted, would not demonstrate that she suffered persecution in Mali or that the government was unwilling to control her persecutor.

## III

Because Keita has not demonstrated that the record compels a conclusion contrary to the one reached by the BIA, we deny her petition for review.