**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0463n.06
Filed: June 29, 2007

**No. 06-3053**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SVETLANA SEDRAKYAN, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW |
| | ) | OF DECISION OF BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
| | ) | |
| ALBERTO GONZALES, Attorney General, | | **O P I N I O N** |
| | | |
| Respondent. | | |

---

**BEFORE:** **COLE and McKEAGUE, Circuit Judges; and COHN, District Judge.**[*]

**McKEAGUE, Circuit Judge.** Petitioner Svetlana Sedrakyan claims eligibility for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, 1465 U.N.T.S. 85, 23 I.L.M. 1027 ("CAT"). The Immigration Judge (the "IJ") denied her claims, and the Board of Immigration Appeals (the "BIA") affirmed. Sedrakyan appeals the denial of her claims, as well as the IJ's denial of her motion for a continuance and the BIA's summary affirmance.

Sedrakyan's appeal is not well taken. She failed to pursue several of her arguments before the BIA; because of this, we do not have jurisdiction to review those arguments. As for the

---

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

arguments she did pursue below, Sedrakyan has failed to show that the board's decision was not based on substantial evidence. Accordingly, we affirm.

**I**

Sedrakyan, age 53, was born in Georgia, but is an ethnic Armenian. Her family left Georgia for Moldova when Sedrakyan was five years old. She graduated from the Tiraspol State Pedagogical Institute with a teaching degree in Russian Language and Literature. She married an Armenian citizen in 1977 and moved to Armenia. She is currently an Armenian citizen.

Both of Sedrakyan's parents live in Yerevan, Armenia.[1] Her father was a military pilot who is now retired and receives a government pension. She has a daughter who lives with her parents, and a son who is a member of the Armenian military. Sedrakyan's daughter moved in with her parents after some "hooligans" broke into the apartment where her daughter lived.

According to Sedrakyan, the Armenian government targeted her due to her political opinions. Specifically, she points to three events of past persecution. In 1996, she gave a speech at a political demonstration. At some point during the demonstration, a government official was hit with an umbrella. After the demonstration, the police in Yerevan took Sedrakyan into custody as a suspect in the assault. In the course of her custody, she was beaten and received a head injury. She refused to confess and was released without charge two days later.

---

[1]An alternate spelling of the city is "Erevan." Wikipedia, Yerevan, at http://en.wikipedia.org/wiki/Yerevan (last visited June 20, 2007). Sedrakyan used both spellings in her petition.

In 1998, Sedrakyan was forced to leave her job as a schoolteacher. Her school was used as a polling center for the presidential election that spring. She explained that she refused pressure to falsify the election results, and was forced out as a result.

In 2000, Sedrakyan again spoke at a political demonstration. The police in Yerevan took her into custody "only for a few hours" after the demonstration. She did not testify that they physically beat her, although in her petition she does state that they did. They told her that she belonged in Georgia (the country of her birth) and was not to participate in any more demonstrations.

She left Armenia for the United States in November 2000. She arrived as a nonimmigrant visitor for pleasure with authorization to stay until May 21, 2001. She overstayed her visa and, in November 2001, filed an application for asylum, withholding of removal, and relief under CAT. The former Immigration and Naturalization Service sought to remove her for remaining in the United States beyond authorization. Sedrakyan admitted the allegations in the notice to appear and conceded removability.

After several continuances and a change of venue, a merits hearing was held on March 23, 2004, before Immigration Judge Joan Churchill. In addition to the incidents that occurred while she was in Armenia, Sedrakyan also submitted evidence of two anonymous threats against her and her daughter,[2] as well as the recent deportation of a leader of a political movement, Alkide Vacanyan.

---

[2]The messages are similar. One reads:

> Sonya Haik!
>
> Alert your mother
> Svetlana, not to come back to Armenia.

She further testified about a bomb planted under the car of a person named Petro Mger, the chairman of the Grepuni Society.

The IJ concluded that Sedrakyan had not shown that she was a refugee and denied her petition. The BIA affirmed the IJ's decision. Sedrakyan now petitions for review of the BIA's decision.

## II

### A. Petitioner's Claims on Review

Sedrakyan argues that the IJ made several reversible errors. In her first claim, she contends that she did not receive a full and fair hearing in violation of her right to due process. Specifically, she raises several purported problems, including: (1) the IJ refused to continue the hearing until Sedrakyan's new attorney could participate; (2) the IJ interrupted her testimony on multiple occasions; (3) the translator was not in the same room with either Sedrakyan or the IJ; (4) the translator was not properly sworn; (5) there are a large number of "indiscernible" references in the transcript; (6) the IJ applied undue pressure on Sedrakyan to testify without a translator at several points in the hearing; and (7) documents were either lost or ignored by the IJ. In her second claim, Sedrakyan argues that the IJ should not have granted her prior counsel's motion to withdraw because

---

and it will be better if you too, get away
from this place. The danger gradually
Is getting bigger, and could become an
Exploding danger.
Well-wisher

- 4 -

it was procedurally defective. She asserts that the IJ failed to give her adequate notice of the granting

of the motion to withdraw. She also argues that her own *pro se* representation was so deficient as

to deny her a fair hearing. These errors amounted to a denial of due process, according to Petitioner.

In her third claim, she asserts that the IJ's decision was not based on substantial evidence. Lastly,

she raises a number of other arguments pertaining to her request for withholding of removal and her

CAT claim.

In response, the Attorney General points out that Sedrakyan failed to raise several of these

issues before the BIA. On the issues properly presented to the BIA, the Attorney General argues that

the IJ and the BIA did not err.

## B.     Exhaustion of Administrative Remedies

Before raising an issue in federal court, a petitioner seeking relief under the immigration laws

must present the issue to the BIA if that body has the authority to review it. *Sterkaj v. Gonzales*, 439

F.3d 273, 279 (6th Cir. 2006). A petitioner is required to "explicitly identify the grounds" for appeal.

*Csekinek v. INS*, 391 F.3 819, 823 (6th Cir. 2004). Specifically, 8 C.F.R. § 1003.3(b) requires:

> The party taking the appeal must identify the reasons for the appeal in the Notice of Appeal [to the BIA] (Form EOIR-26 or Form EOIR-29) or in any attachments thereto, in order to avoid summary dismissal pursuant to § 1003.1(d)(2)(i). The statement must specifically identify the findings of fact, the conclusions of law, or both, that are being challenged. If a question of law is presented, supporting authority must be cited. If the dispute is over the findings of fact, the specific facts contested must be identified. Where the appeal concerns discretionary relief, the appellant must state whether the alleged error relates to statutory grounds of eligibility or to the exercise of discretion and must identify the specific factual and legal finding or findings that are being challenged.

It is not sufficient to raise a reviewable issue only in the notice of appeal filed with the BIA; the issue must also be developed in the petitioner's brief. *Hasan v. Ashcroft*, 397 F.3d 417, 420 (6th Cir. 2005). If a petitioner does not exhaust her administrative remedies on a particular issue, that issue is deemed waived. *Id.* at 419-20; *see also Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004) (holding "that only claims properly presented to the BIA and considered on their merits can be reviewed by this court in an immigration appeal"). "[T]his requirement of exhaustion of administrative remedies as a prerequisite to jurisdiction in the federal court of appeals is a creature of statute, namely 8 U.S.C. § 1252(d)(1), and not a court-created doctrine." *Hasan*, 397 F.3d at 420 (citing *Ramani*, 378 F.3d at 559).

While constitutional issues are generally not reviewable by the BIA, some due-process claims alleging procedural errors are reviewable. *Sterkaj*, 439 F.3d at 279. If, for example, a petitioner grounds a due-process claim on "correctable procedural errors," the law requires that the petitioner present those errors to the BIA before coming to federal court. *Id.*; *see also Cela v. Gonzales*, 205 F. App'x 376, 384-85 (6th Cir. 2006) (explaining that the court lacked jurisdiction to review the petitioner's due-process claims involving inadequate or faulty interpretation because the petitioner failed to exhaust his administrative remedies).

The exhaustion requirement is fatal to several of Sedrakyan's arguments. Review of her notice of appeal to the BIA and her supporting brief shows that she did not raise any of her due-process arguments about problems with the translator (issues (3) - (6) of her first claim, *supra*), nor did she raise the purported procedural irregularities surrounding her prior counsel's motion to withdraw (her second claim). While Sedrakyan did refer to several instances of translation problems,

she did so in the context of her arguments that the IJ interrupted her and caused the hearing to be disjointed. At no point did she allude to problems caused by the translator being in a different room, by problems with the translator which infected the entire hearing, or by the IJ placing undue pressure on her to speak English. Nor did she raise any problems with the procedures used by the IJ in permitting her prior counsel to withdraw. When preparing her brief to the BIA, Petitioner had access to the transcript and the administrative record, and therefore had no basis for not pursuing the arguments before the board. All of these alleged errors could have been corrected by the BIA by, for example, ordering a new hearing; as such, the law required her to present those issues to that board before bringing them here. Accordingly, her failure to exhaust her administrative remedies has left us without jurisdiction to review the merits of these issues.

Sedrakyan did raise her third claim and the remaining arguments of her first claim before the BIA. We now turn our attention to the merits of those arguments.

## C.      Standard of Review

The BIA rejected Sedrakyan's claims that the IJ erred by denying her request for a continuance, ignoring documents, and failing to weigh the evidence properly. It did so by adopting the IJ's reasoning as its own and adding the following comment:

> Assuming the respondent's credibility, we agree that the treatment she received did not rise to the level of persecution and that the respondent has not met her burden of proof to show eligibility for relief. The respondent also asserts that the Immigration Judge erred in not granting her a continuance to obtain counsel. In light of the previous continuances in the case and the evidence that the respondent had five months within which to obtain new counsel after her previous counsel withdrew, we find no error.

*In re: Svetlana Sedrakyan*, No. A79-602-388, slip op. at 1 (BIA Dec. 15, 2005). When the BIA adopts the IJ's reasoning as its own, but makes an additional comment, we "directly review the decision of the IJ" as the BIA's own, "while [also] considering the additional comment made by the BIA." *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005).

Legal determinations made by the BIA or IJ are reviewed *de novo*, while factual findings are reviewed under the deferential "substantial evidence" standard. *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998). The determination of whether an alien qualifies as a refugee will be upheld so long as it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole," and the determination will be reversed only if the court finds that the evidence compels a different result. *Ramaj v. Gonzales*, 466 F.3d 520, 527 (6th Cir. 2006) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)).

## D.    **Due Process**

Sedrakyan argues that the IJ denied her due process by refusing to continue the hearing until her new attorney could participate, interrupting her testimony several times, failing to locate lost documents, and ignoring other documents. In rejecting her first argument, the BIA noted that Sedrakyan had several earlier continuances and had five months to find new counsel. The BIA did not specifically discuss her other arguments.

Whether to grant a continuance is left to the discretion of the IJ. 8 C.F.R. § 1003.29. As this court has explained, "[t]he failure to be granted discretionary relief does not amount to a deprivation of a liberty interest." *Huicochea-Gomez v. INS*, 237 F.3d 696, 700 (6th Cir. 2001) (cited in

*Abu-Khaliel v. Gonzales*, 436 F.3d 627, 635 (6th Cir. 2006)). Thus, Sedrakyan does not have a viable substantive due-process claim based on the IJ's denial of the continuance.

Nor do the purported errors outlined by Sedrakyan amount to a denial of procedural due process. An alien facing removal is entitled to due process, including a full and fair hearing. *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001). The IJ retains, however, "broad discretion in conducting that hearing." *Castellano-Chacon v. INS*, 341 F.3d 533, 553 (6th Cir. 2003). A due-process violation occurs only when "the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005) (quoting *Ladha v. INS*, 215 F.3d 889, 904 (9th Cir. 2000)). "For a petitioner to prevail on a due process claim, [she] must demonstrate not only error, but also 'substantial prejudice'–namely that the alleged violation affected the outcome of the proceeding." *Hermez v. Gonzales*, No. 05-4555, 2007 WL 930415, at *2 (6th Cir. Mar. 28, 2007) (unpublished) (quoting *Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005)).

Sedrakyan argues that without her new counsel present, she could not provide coherent and consistent testimony during the hearing. What she does not say, however, is that the problem is largely (if not wholly) one of her own making. She dismissed her prior counsel in October 2003 and the IJ granted counsel's motion to withdraw in early February 2004. While Petitioner asserts on appeal that she did not have adequate notice of the IJ's order granting the motion, she cannot show she was prejudiced given she was the one who dismissed her prior counsel and, more importantly, she had already retained new counsel in January 2004. Petitioner offers no explanation why her new counsel did not attend the hearing. She refers to a letter purportedly from counsel asking the IJ to

transfer the case from Cleveland to Cincinnati. The letter is not, however, included in the record

before us, so there is no way for us to determine whether her new counsel offered any explanation

(reasonable or not) for his failure to attend.

As for the hearing itself, a review of the transcript does confirm that the hearing was

disjointed at times. Most of the problems occurred at the beginning of the hearing, before Sedrakyan

began testifying about her case. There are fewer interruptions of the hearing once the IJ begins to

consider the merits of Sedrakyan's petition. A review of those sections confirms that the IJ did not

interrupt Petitioner unnecessarily, and that the hearing was sufficiently coherent.[3]

As for the documents that Petitioner contends were lost, she provided no proffer to the BIA

of what those documents might be, the information that might be contained in the documents, or

otherwise how she was prejudiced by their absence from the hearing. Similarly, she does not explain

how the documents that the IJ purportedly ignored would have impacted her case. In any event, there

is no duty of a judicial officer to index on the record all of the documents and other evidence

considered in arriving at a decision. *Cf. United States v. Gale*, 468 F.3d 929, 941 (6th Cir. 2006)

("[A] district court need not describe in detail or list all of the documents or other evidence it

---

[3]Sedrakyan also suggests that there was a "Tape 2" missing from the hearing transcript. She did not raise this issue before the BIA, and therefore has failed to exhaust her administrative remedies on the matter. Furthermore, a review of the transcript belies any concern about a lost tape. Although the hearing is, at times, disjointed, there is nothing to indicate that a large portion of the testimony is missing, as one would expect if an entire tape was left out. From the IJ's brief discussion about "Tape 1" at the beginning of the hearing, it appears likely that the IJ simply started the hearing using "Tape 2" rather than "Tape 1." Thus, when the IJ switched to "Tape 3" in the middle of the hearing, she was likely switching from "Tape 2" to "Tape 3."

considered during sentencing."). Without some affirmative showing that the IJ actually ignored the documents, Petitioner cannot show a due-process violation. *Cf. id.*

**E.      Substantial Evidence Supports the IJ's Decision**

Sedrakyan further contends that the record does not contain substantial evidence supporting the IJ's denial of asylum. The Attorney General may grant asylum to a refugee. 8 U.S.C. § 1158(b)(1); *Namo v. Gonzales*, 401 F.3d 453, 456 (6th Cir. 2005). A "refugee" is any person who is outside of the country of the person's nationality or last habitual residence and who is unable or unwilling to return to that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42); *Berri v. Gonzales*, 468 F.3d 390, 396 (6th Cir. 2006); *Rreshpja v. Gonzales*, 420 F.3d 551, 554 (6th Cir. 2005). Whether to grant asylum involves two separate inquiries: (1) does the applicant qualify as a "refugee" as defined under the law; and (2) if so, does the refugee merit "a favorable exercise of discretion by the Attorney General." *Mikhailevitch*, 146 F.3d at 389 (quoting *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994)). The applicant has the burden of proof to show that she is a refugee. 8 U.S.C. § 1158(b)(1)(B)(i); *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004).

"An applicant claiming to be a refugee must present specific facts demonstrating that she suffered past persecution or that she has a well-founded fear of future persecution." *Rreshpja*, 420 F.3d at 554. If the applicant satisfies her burden on past persecution, "she is presumed to have a well-founded fear of [future] persecution." *Id*. at 554-55 (quoting *Mikhailevitch*, 146 F.3d at 389);

*see also* 8 C.F.R. § 208.13(b)(1). "Otherwise, an applicant can obtain asylum only on the basis of a fear of future persecution by demonstrating that [her] fear is genuine and that a reasonable person under [her] circumstances would have the similar fear." *Zacarias v. Gonzales*, No. 06-3581, 2007 WL 1347897, at *3 (6th Cir. May 8, 2007) (unpublished) (citing *Berri*, 468 F.3d at 396; *Namo*, 401 F.3d at 456).

### 1. Past Persecution

Sedrakyan argues that the IJ erred in concluding that she did not suffer past persecution in Armenia. The IJ did not make an adverse credibility finding, and the BIA assumed her to be credible, so we "must accept the [factual] representations [she] made in the application and [her] testimony as true." *Gilaj*, 408 F.3d at 285-86.

To establish past persecution, an applicant must show that she "was specifically targeted by the government for abuse based on a statutorily protected ground and was not merely a victim of indiscriminate mistreatment." *Id.* This is not an easy standard to meet. "[P]ersecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional. If persecution were defined expansively, a significant percentage of the world's population would qualify for asylum in this country . . . ." *Lumaj v. Gonzales*, 462 F.3d 574, 577 (6th Cir. 2006) (quoting *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993)). An applicant must show something "more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch*, 146 F.3d at 390.

Contrary to Sedrakyan's position, the record evidence does not compel a decision in her favor. Based on Petitioner's own testimony, the IJ concluded that her detention in 1996 was due to the police investigation of an assault, rather than her own political opinions. Detention, arrest, and even physical abuse in connection with a police investigation do not constitute persecution. *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004) (affirming the immigration judge's finding that there was "no evidence that the police were conspiring with a rival political group, or that they arrested [the alien] for any reason other than his involvement in causing a public disturbance").

While her firing in 1998 and detention in 2000 were arguably based on her political opinions, these isolated incidents do not alone constitute persecution. In *Mullai v. Ashcroft*, 385 F.3d 635 (6th Cir. 2004), this court rejected a similar argument by a petitioner. Petitioner alleged that she had organized and spoke at several political rallies. After the rallies, the authorities detained her, beat her, and, on at least one occasion, deprived her of food and water for several days. *Id*. at 637. She even lost her job as a chemical engineer shortly after her last speech. *Id*. The court affirmed the BIA's denial of her petition for asylum, finding that the several incidents cited by the applicant did not rise to the level of persecution. *Id*. 638-39. Like in *Mullai*, the authorities' treatment of Sedrakyan may be deplorable, but is not egregious enough to constitute persecution. *Gilaj*, 408 F.3d at 284 (explaining that one or two isolated beatings, while offensive to all forms of civilized society, do not compel a finding of persecution); *Dandan v. Ashcroft*, 339 F.3d 567, 574 (7th Cir. 2003) (explaining that "being detained, beaten and deprived of food for three days did not compel a finding of persecution").

## 2.      **Future Persecution**

Nor has Sedrakyan pointed to evidence compelling us to find that she has a well-founded fear

of future persecution.  As she has failed to show past persecution, Sedrakyan must show instead that:

> (1) [she] has a fear of persecution in . . . her country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) there is a reasonable probability of suffering such persecution if [she] were to return to that country; and (3) [she] is unable or unwilling to return to that country because of such fear.

*Lumaj*, 462 F.3d at 577-78 (quoting *Mikhailevitch*, 146 F.3d at 389).  "The fear of persecution must

be both subjectively genuine and objectively reasonable." *Id*. (citing *Perkovic*, 33 F.3d at 620-21).

Beyond the two demonstrations and the lost job, Sedrakyan bases her fear of future

persecution on the adverse treatment of political leaders and Armenia's generally poor human-rights

record.[4]   Additionally, she points to the break-in at her daughter's apartment and the anonymous

threats made against her and her daughter.

There is no question that Armenia's human-rights record is poor, and the IJ acknowledged

this fact.  Yet, the IJ concluded that there was little in the record to show that the Armenian

government would target Sedrakyan for her political opinions if she were to return.  Without a

stronger showing of past persecution based on her involvement in politics, the fact that some

---

[4]Sedrakyan asks that we take judicial notice of the March 2006 U.S. Department of State Report on Human Rights Conditions in Armenia.  The IJ noted the poor human-rights record of Armenia based on the then-current 2003 report.  Sedrakyan does not point to any material differences between the 2003 report and the 2006 report, or any material errors in the earlier report.  In any event, we cannot take judicial notice of facts, including country reports, outside the administrative record. *Keita v. Gonzales*, 175 F. App'x 711, 714 (6th Cir. 2006).

political party or movement leaders are mistreated is too tenuous a reed to support Sedrakyan's claim.

Moreover, Sedrakyan fails to link the break-in to her own political activities; rather, the record just as plausibly suggests that this was a random act of violence. "[A] random criminal act . . . is not sufficient for a finding of persecution." *Lumaj*, 462 F.3d at 577-78. Similarly, the threats are vague and not specifically tied to any political opinions held by Petitioner. Finally, it should be noted that Sedrakyan's daughter and parents currently live in the same town where Sedrakyan was detained in 1996 and 2000. If Sedrakyan were objectively in danger of persecution, one would not expect her immediate family to be still residing in the town where she would presumably face the greatest risk.

Because the BIA determined that Sedrakyan does not qualify as a "refugee" as defined in 8 U.S.C. § 1101(a)(42)(A) and substantial evidence supports that determination, we do not address the question whether she merits a favorable exercise of discretion with respect to her application for asylum. *Koliada v. INS*, 259 F.3d 482, 488 (6th Cir. 2001). Accordingly, we affirm the BIA's decision to deny Sedrakyan asylum.

## F.     Remaining Claims

Sedrakyan raises a number of other claims. As part of her asylum petition, she asked for withholding of removal. Withholding of removal will be granted if a petitioner can demonstrate "a clear probability of persecution" by presenting evidence that shows that should she return to her native country, "it is more likely than not that [she] would be subject to persecution." *INS v. Stevic*,

467 U.S. 407, 424 (1984). This is a higher standard than the standard for receiving asylum. Thus, if a petitioner is not eligible for asylum, she necessarily fails to satisfy the standard for withholding of removal. *Yu v. Ashcroft*, 364 F.3d 700, 703 n. 3 (6th Cir. 2004).

To support her CAT claim, Sedrakyan must show that "it is more likely than not that . . . she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). For many of the reasons noted above, and because she has not separately pursued a CAT claim, we reject her request for relief under that treaty. *Dashi v. Gonzales*, No. 06-3006, 2007 WL 177915, at *5 (6th Cir. Jan. 24, 2007) (unpublished).

Sedrakyan also asks that her case be remanded so that the BIA can consider staying her removal while she seeks an adjustment based on an I-130 petition filed by her husband. As explained by the Attorney General, however, the BIA has already denied her request for reopening to adjust her status. Because she has not designated that decision in her notice of appeal, we are precluded from considering the BIA's decision not to reopen her case. *Rreshpja*, 420 F.3d at 559.

Finally, Sedrakyan argues that the BIA should not have affirmed the IJ's decision without opinion because of the IJ's "material and significant" errors. Contrary to Sedrakyan's assertion, however, the BIA did not affirm the IJ's decision without opinion. Under 8 C.F.R. § 1003.1(e)(4)(ii),

> If the Board member determines that the decision should be affirmed without opinion, the Board shall issue an order that reads as follows: "The Board affirms, without opinion, the result of the decision below. The decision below is, therefore, the final agency determination. See 8 CFR 3.1(e)(4)." An order affirming without opinion, issued under authority of this provision, *shall not include further explanation or reasoning.* Such an order approves the result reached in the decision below; it does not necessarily imply approval of all of the reasoning of that decision,

> but does signify the Board's conclusion that any errors in the decision of the
> immigration judge or the Service were harmless or nonmaterial.

(Emphasis added.)  As noted above, the BIA issued a short opinion "adopt[ing] and affirm[ing] the

decision of the Immigration Judge" while offering its own brief comment on the merits of

Sedrakyan's case.  This court has upheld similar decisions. *See, e.g.*, *Gishta*, 404 F.3d at 980

(holding that a BIA decision that adopts and affirms an IJ's decision "demonstrates that the board

independently reviewed the case").  In any case, Sedrakyan has failed to support her argument that

the IJ erred, as explained above.

### III

For the reasons set out above, we AFFIRM the decision of the BIA.