**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0634n.06

Case No. 19-3986

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| HENRY GERARDO NAVAS-MEDINA, | ) | **FILED**<br>Nov 06, 2020<br>DEBORAH S. HUNT, Clerk |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| WILLIAM P. BARR, Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent. | ) | |

BEFORE: BOGGS, DONALD, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Petitioner Henry Navas-Medina twice entered the United States illegally. And the United States twice ordered him removed. This second time around, he sought protection from removal. An Immigration Judge denied his request, and the Board of Immigration Appeals affirmed. Because substantial evidence supports the agency's decision, we deny the petition for review.

I.

Henry Navas-Medina is a citizen of Honduras. He illegally entered the United States in 2011. He was detained, ordered removed, and deported to Honduras. But he did not stay for long. He says that upon returning to Honduras, members of MS-13 attacked him, and he agreed to join the gang under duress. But he eventually fled to Mexico.

In 2013, he again entered the United States illegally. He evaded detection for five years, but immigration officials apprehended him in 2018 after he got drunk and crashed his car into a light pole. Immigration officials reinstated the prior order of removal and prepared to deport him to Honduras. *See* 8 U.S.C. § 1231(a)(5).

Navas-Medina now seeks protection from removal. He argues that he will face persecution in Honduras based on his membership in a particular social group consisting of the "male members of the Navas family." Pet'r Br. 10. He testified that when he was a young child, his father killed a member of the MS-13 gang while serving as a naval police officer. He claims MS-13 retaliated by killing his father a decade later. Since then, Navas-Medina says that MS-13 has attacked him twice—first by assaulting him at work, and then by kidnapping and beating him three years later.

An Immigration Judge denied Navas-Medina's request for withholding of removal. The Judge held that his proposed social group—the men of the Navas family—was not cognizable under the Immigration and Naturalization Act ("INA"). The Judge also rejected Navas-Medina's request for removal protection under the Convention Against Torture ("CAT"). He found that Navas-Medina was unlikely to be tortured by or with the acquiescence of the Honduran government if he was sent home, so he did not qualify for relief under the Convention. The Board of Immigration Appeals affirmed.[1]

Navas-Medina now petitions for review in this court. He argues that the Board erred by denying his requests for removal protection under the INA and CAT. We review the agency's findings of fact for substantial evidence and its legal conclusions de novo. *Kilic v. Barr*, 965 F.3d

---

[1] Navas-Medina previously sought a stay of removal. We denied that request because he had "not demonstrated a substantial likelihood of success on the merits." *Navas-Medina v. Barr*, No. 19-3986 (6th Cir. Oct. 17, 2019) (order) (per curiam).

469, 473 (6th Cir. 2020). Detecting no error in the agency's decision, we deny the petition for review.

II.

Navas-Medina first argues that the Board erred in denying his request for withholding of removal under the INA. An alien is entitled to that relief when he proves he will face persecution in the proposed country of removal based on his "membership in a particular social group." 8 U.S.C. § 1231(b)(3)(A). Navas-Medina argues that he will face persecution in Honduras because he is a "male member of the Navas family." Thus, a threshold issue is whether the men of the Navas family constitute a cognizable social group under the INA. Navas-Medina argues that they do because MS-13 has repeatedly targeted them for violence. The Board rejected this reasoning, and so do we.

Under our case law, membership in a family can sometimes count as membership in a particular social group. *Al-Ghorbani v. Holder*, 585 F.3d 980, 995 (6th Cir. 2009). But only when that family is "recognizable as a distinctive subgroup of society." *Id.* In other words, a particular family must have some "greater meaning in society" to qualify for removal protection. *Matter of L-E-A-*, 27 I. & N. Dec. 581, 594 (Att'y Gen. 2019). "It is not enough that the family be set apart in the eye of the persecutor, because it is the perception of the relevant society . . . that matters." *Id.*

The Board held that Navas-Medina did not show that his family is a recognized, distinctive subgroup in Honduran society. Substantial evidence supports its conclusion. For starters, the Navas family does not appear to be associated with a disfavored region, class, religion, or profession. *See Al-Ghorbani*, 585 F.3d at 995. Nor does it seem to have some greater sense of

meaning in Honduran society. Instead, it is an ordinary family that has suffered from the country's gang problem (an all-too-common occurrence).

To be sure, Navas-Medina's testimony shows that some members of MS-13 may have targeted him because of his father's identity. But that fact, standing alone, cannot establish that Honduran *society* takes a similar view of his family's status. *See Umana-Ramos v. Holder*, 724 F.3d 667, 671–72 (6th Cir. 2013). And there is no evidence that it does. Thus, the Board correctly found that Navas-Medina's proposed social group is not cognizable and rejected his request for withholding of removal under the INA.[2]

### III.

Navas-Medina next argues that he is entitled to protection under the CAT. To be eligible for this protection, an alien must prove that he is more likely than not to be tortured if removed to a particular country. 8 C.F.R. § 1208.16(c)(2); *id.* § 1208.17(a). Torture is defined as "an extreme form of cruel and inhuman treatment." *Id.* § 1208.18(a)(2). To qualify, it must be inflicted "by or . . . with the consent or acquiescence" of the government. *Id.* § 1208.18(a)(1).

The Board rejected Navas-Medina's claim for CAT protection. It reasoned that he had not shown that he would likely be tortured with the acquiescence of the Honduran government. We review this factual finding for substantial evidence, affirming "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Slyusar v. Holder*, 740 F.3d 1068, 1072 (6th Cir. 2014).

---

[2] The Board also rejected Navas-Medina's request for withholding of removal on an alternative ground: Even if Navas-Medina were a member of a cognizable social group, he did not prove that Honduras's government is unable or unwilling to control the violence directed toward him. Navas-Medina challenges this finding. But because we agree that Navas-Medina's claim fails for want of a cognizable social group, we need not address this alternative basis for denying relief.

Navas-Medina fails to show that the Board erred. The record does not establish that the Honduran government consents or acquiesces to the violence that MS-13 inflicts. To the contrary, record evidence shows that the Honduran government has tried to crack down on MS-13's violence. It has adopted strict anti-gang laws and worked to combat corruption in the country. It has established a commission to review the conduct of its police officers, leading to the removal of nearly 4,500 officers in just a few years. And even Navas-Medina concedes that Honduran law-enforcement officers continue to take action against gang members. Honduras remains a dangerous country. But the government has undertaken "an extensive effort to counter [gang violence]," so its "alleged inability to control [MS-13] does not constitute acquiescence." *Quintero-Florentino v. Barr*, 788 F. App'x 348, 351–52 (6th Cir. 2019) (citation omitted).

True, Navas-Medina has been a victim of unpunished crime. He testified that in 2009 the police refused to file a report after he told them that his business was robbed at gunpoint. He suspects MS-13 was involved. But even assuming he is right, this account does not prove the police would turn a blind eye to his torture. Nor does his claim that the police arrested him a few days later (ostensibly for disorderly conduct) and robbed him in the process. This police conduct, as Navas-Medina describes it, is condemnable. But it falls far short of acquiescence to torture.

Navas-Medina also testified that MS-13 gang members once attacked him at work after learning he was a member of the Navas family. Even worse, he says, MS-13 kidnapped and beat him after he returned to Honduras in 2012. But Navas-Medina did not report either attack to the police. And he has "offered no evidence to support [his] subjective belief that reporting [the attacks] would have been dangerous or futile." *Velasquez-Rodriguez v. Whitaker*, 762 F. App'x 241, 245 (6th Cir. 2019); *see also Keita v. Gonzales*, 175 F. App'x 711, 713 (6th Cir. 2006). Thus, we cannot conclude that the police acquiesced in this criminal conduct.

Finally, Navas-Medina recounts an incident in which the police raided his grandparents' house looking for him, guns blazing. (This was after he had agreed to join MS-13 and received a gun from the gang.) He wasn't there. When his grandparents went to the police station the next day, the police denied that there had been a raid. It is thus unclear what happened that day. And in any event, this secondhand and uncorroborated account does not compel the conclusion that the Honduran government would acquiesce in Navas-Medina's torture.

In sum, Navas-Medina has not established that he will likely be tortured by or with the acquiescence of the Honduran government. We thus uphold the Board's decision.

The petition for review is denied.